[No. S121173. May 9, 2005.]

BRANDI R. FOX, Plaintiff and Appellant, v.
ETHICON ENDO-SURGERY, INC., Defendant and Respondent.

798

800

## COUNSEL

Law Offices of David J. St. Louis, David J. St. Louis and Lynette D. Hecker for Plaintiff and Appellant.

Robinson, Calcagnie & Robinson and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Drinker Biddle & Reath, Charles F. Preuss and Alan J. Lazarus for Defendant and Respondent.

Hugh F. Young, Jr., and Harvey M. Grossman for The Product Liability Advisory Council, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Horvitz & Levy, David S. Ettinger and Andrea M. Gauthier for California Medical Association, California Dental Association and California Healthcare Association as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**MORENO, J.**—Plaintiff Brandi R. Fox filed a medical malpractice action after gastric bypass surgery performed on her resulted in severe complications. In the course of discovery, Fox received information that a medical device used during the surgery may have malfunctioned, causing her injury. Fox then amended her complaint to add a products liability cause of action

against the manufacturer of the device, Ethicon Endo-Surgery, Inc. (Ethicon). Ethicon filed a demurrer raising a statute of limitations defense, to which plaintiff responded by relying upon the delayed discovery rule most recently discussed by this court in *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383 [87 Cal.Rptr.2d 453, 981 P.2d 79] (*Norgart*).

Plaintiff alleges that she could not, with reasonable investigation, have discovered earlier that the medical device might have caused her injury. We granted review to determine whether such an allegation is sufficient to withstand demurrer, or whether we should adopt the bright-line rule announced in *Bristol-Myers Squibb Co. v. Superior Court* (1995) 32 Cal.App.4th 959, 966 [38 Cal.Rptr.2d 298] (*Bristol-Myers Squibb*), that "[w]hen a plaintiff has cause to sue based on knowledge or suspicion of negligence the statute [of limitations] starts to run as to *all* potential defendants."

■ We conclude that, under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action. In that case, the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have revealed its factual basis. We disapprove the decision in *Bristol-Myers Squibb v. Superior Court, supra,* 32 Cal.App.4th 959, to the extent that it holds to the contrary.

## I. FACTS AND PROCEDURAL HISTORY

On April 10, 1999, respondent Brandi R. Fox underwent Roux-en-Y gastric bypass surgery and postsurgical treatment.[1] The operation was performed by Dr. Herbert Gladen. During the surgery, Fox was under general anesthesia and unconscious. Fox went home following the surgery, but returned soon after the surgery because she felt ill.

---

[1] Gastric bypass surgery, used to treat morbid obesity, makes the stomach smaller and allows food to bypass part of the small intestine. In a Roux-en-Y gastric bypass, the stomach is made smaller by creating a small pouch at the top of the stomach with surgical staples or a plastic band. The smaller portion of the stomach is connected directly to the middle portion of the small intestine (jejunum), bypassing the rest of the stomach and the upper portion of the small intestine (duodenum). (Nat. Inst. Diabetes and Digestive and Kidney Diseases, Gastrointestinal Surgery for Severe Obesity (2001) NIH Pub. No. 01-4006 <http://win.niddk.nih.gov/publications/gastric.htm> [as of May 9, 2005].)

Fox's condition worsened, moving Dr. Gladen to perform exploratory surgery a few days after the gastric bypass operation. The exploratory surgery revealed a perforation at the stapled closure of the small intestine, which caused fluid to leak into Fox's abdominal cavity. Dr. Gladen attempted to seal the perforation. In his operative report for the exploratory surgery, Dr. Gladen failed to identify a cause for the perforation. Fox required additional medical care and remained hospitalized until March 4, 2000.

On April 6, 2000, Fox served Dr. Gladen, and the hospital and medical center in Fresno where the surgery and subsequent care took place, with a notice of intent to commence action pursuant to Code of Civil Procedure section 364. Fox filed a complaint for medical malpractice against the doctor and the treating hospitals in Fresno County Superior Court on June 28, 2000. In her complaint, Fox claimed that "[d]efendants lacked the necessary knowledge and skill to properly care for [her] condition and were negligent and unskillful in the diagnosis, treatment, and prescription procedures utilized in treating [her] condition. The negligence claimed is for negligently performing pre-surgical, surgical, and post-surgical care so as to cause injuries and damages to . . . Fox."

Fox named as defendants Dr. Gladen, the hospital and medical center, and Does 1 to 100, inclusive. The complaint alleged that "the defendants named herein as DOES 1 through 100, inclusive, were the agents, servants, and employees of each of the remaining defendants, and in doing the things hereinafter alleged, were acting within the course and scope of their authority as such agents, servants, or employees, and with the permission and consent of their codefendants."

When Fox deposed Dr. Gladen on August 13, 2001, the doctor testified that he had discovered a leak at the stapled closure of Fox's small intestine during the exploratory surgery. He further noted that the bowel had been stapled with an "Ethicon GIA-type stapler," that the hospital had furnished the stapler, and that he had found on previous occasions that such a stapler had caused postsurgery leaks.

Accordingly, on November 28, 2001, Fox filed a first amended complaint adding the manufacturer of the stapler, Ethicon, as a named defendant. In the first amended complaint, Fox asserted a products liability cause of action against Ethicon, alleging that she was injured by an "Ethicon GIA-type stapler" on or about April 10, 1999. Fox used a Judicial Council form for products liability causes of action, specifying counts for strict liability relating to the design, manufacture, and assembly of the stapler, negligence,

and breach of implied warranty. The first amended complaint also alleged that Fox "did not discover, nor suspect, nor was there any means through which her reasonable diligence would have revealed, or through which she would have suspected the Ethicon GIA-type stapler as a cause of her injury until the deposition of [Dr. Gladen] was taken on August 13, 2001."

Ethicon demurred to the first amended complaint, contending that the products liability claim was time-barred by the one-year statute of limitations under Code of Civil Procedure former section 340, former subdivision 3. (Stats. 1982, ch. 517, § 97, p. 2334; see fn. 3, *post.*) In opposition, Fox noted that she had no knowledge that the gastric bypass surgery would involve the use of a stapler or any similar device.

Fox further stated that she never learned during the postsurgical care following the gastric bypass operation that the stapler had malfunctioned or could have caused the leakage and other problems, and that she first discovered the possibility of a stapler malfunction when her counsel notified her of Dr. Gladen's deposition testimony. Finally, Fox offered to file a second amended complaint to clarify the facts supporting her assertion that she had no reason to suspect the stapler until after Dr. Gladen's testimony, and that no reasonable person would have suspected that the Ethicon product had malfunctioned.

Fox's attorney also filed a declaration stating that neither the operative report nor the reparative operative report indicated that the stapler had malfunctioned or misfired. The declaration also stated that Dr. Gladen's testimony was taken during the normal course of discovery in a medical malpractice lawsuit, Fox was reasonably diligent in pursuing the lawsuit and discovery, and Fox could allege that Dr. Gladen never mentioned a stapler malfunction or defect during the entire course of his postsurgical care.

On June 17, 2002, the superior court sustained Ethicon's demurrer to the products liability cause of action without leave to amend, relying upon *Norgart, supra,* 21 Cal.4th 383, and *Bristol-Myers Squibb, supra,* 32 Cal.App.4th 959, to conclude that the statute of limitations barred the products liability cause of action. The superior court stated that when a plaintiff sues based on knowledge or suspicion of negligence, including medical malpractice as in Fox's case, the statute of limitations begins to run as to all defendants, including manufacturers possibly liable under products liability theories. The superior court also stated that Fox failed to demonstrate that amending the complaint could "overcome the limitations defense." Fox timely appealed from the superior court's order sustaining Ethicon's demurrer as to the products liability cause of action.

The Court of Appeal reversed the superior court's order and remanded with directions to grant Fox leave to amend to allege facts explaining why she did not have reason to discover earlier the factual basis of her products liability claim. In so ruling, the Court of Appeal held that *Bristol-Myers Squibb*'s "bright-line rule of imputed simultaneous discovery of causes of action" did not apply. Ethicon petitioned this court, and we granted review.

## II. DISCUSSION

This case requires us to address once again the proper application of a statute of limitations. (See *Gutierrez v. Mofid* (1985) 39 Cal.3d 892 [218 Cal.Rptr. 313, 705 P.2d 886]; *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103 [245 Cal.Rptr. 658, 751 P.2d 923] (*Jolly*); *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926 [30 Cal.Rptr.2d 440, 873 P.2d 613] (*Bernson*); *Norgart, supra*, 21 Cal.4th at p. 395.)

■ "Statute of limitations" is the collective term applied to acts or parts of acts that prescribe the periods beyond which a plaintiff may not bring a cause of action. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 405, p. 509; accord, *Norgart, supra*, 21 Cal.4th at p. 395.) There are several policies underlying such statutes. One purpose is to give defendants reasonable repose, thereby protecting parties from "defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps." (*Bernson, supra*, 7 Cal.4th at p. 935; *Jolly, supra*, 44 Cal.3d at p. 1112; see also *Davies v. Krasna* (1975) 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161].) A statute of limitations also stimulates plaintiffs to pursue their claims diligently. (*Norgart, supra*, 21 Cal.4th at p. 395; *Jolly, supra*, 44 Cal.3d at p. 1112; see, e.g., *Bernson, supra*, 7 Cal.4th at p. 935.) A countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural grounds. (*Norgart, supra*, 21 Cal.4th at p. 396; *Barrington v. A.H. Robins Co.* (1985) 39 Cal.3d 146, 152 [216 Cal.Rptr. 405, 702 P.2d 563].)

■ A plaintiff must bring a claim within the limitations period after accrual of the cause of action. (Code Civ. Proc., § 312 ["Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued"]; *Norgart, supra*, 21 Cal.4th at p. 397.) In other words, statutes of limitation do not begin to run until a cause of action accrues. (*Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479, 487 [59 Cal.Rptr.2d 20, 926 P.2d 1114].)

■ Generally speaking, a cause of action accrues at "the time when the cause of action is complete with all of its elements." (*Norgart, supra*, 21 Cal.4th at p. 397; see *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*

(1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421] (*Neel*).) An important exception to the general rule of accrual is the "discovery rule," which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (*Norgart, supra,* 21 Cal.4th at p. 397; *Neel, supra,* 6 Cal.3d at p. 187.)

A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." (*Norgart, supra,* 21 Cal.4th at p. 398, citing *Jolly, supra,* 44 Cal.3d at p. 1110; see also *Gutierrez v. Mofid, supra,* 39 Cal.3d at p. 897 ["the uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the *facts* essential to his claim"].) Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. (*Norgart, supra,* 21 Cal.4th at p. 398, fn. 3; *Jolly, supra,* 44 Cal.3d at p. 1112.) *Norgart* explained that by discussing the discovery rule in terms of a plaintiff's suspicion of "elements" of a cause of action, it was referring to the "generic" elements of wrongdoing, causation, and harm. (*Norgart, supra,* 21 Cal.4th at p. 397.) In so using the term "elements," we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.

The discovery rule, as described in *Bernson,* allows accrual of the cause of action even if the plaintiff does not have reason to suspect the defendant's identity. (See *Bernson, supra,* 7 Cal.4th at p. 932.) The discovery rule does not delay accrual in that situation because the identity of the defendant is not an element of a cause of action. (See *Norgart, supra,* 21 Cal.4th at p. 399; *Bernson, supra,* 7 Cal.4th at p. 932.) As the court reasoned in *Norgart,* "[i]t follows that failure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action, whereas a like failure concerning the cause of action itself does." (*Norgart, supra,* 21 Cal.4th at p. 399.) In *Norgart,* we distinguished between ignorance of the identity of the defendant and ignorance of the cause of action based on " 'the commonsense assumption that once the plaintiff is aware of' the latter, he 'normally' has 'sufficient opportunity,' within the 'applicable limitations period,' 'to discover the identity' of the former." (*Norgart, supra,* 21 Cal.4th at p. 399, quoting *Bernson, supra,* 7 Cal.4th at p. 932.)

The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive

knowledge of an injury[2] if they have " ' "information of circumstances to put [them] *on inquiry*" ' " or if they have " ' "*the opportunity to obtain knowledge* from sources open to [their] investigation." ' " (*Gutierrez v. Mofid, supra,* 39 Cal.3d at pp. 896–897, quoting *Sanchez v. South Hoover Hospital, supra,* 18 Cal.3d at p. 101.) In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation.

■ The Legislature, in codifying the discovery rule, has also required plaintiffs to pursue their claims diligently by making accrual of a cause of action contingent on when a party discovered or *should have* discovered that his or her injury had a wrongful cause. (E.g., Code Civ. Proc., §§ 340.1, subd. (a) ["within three years of the date the plaintiff discovers or reasonably should have discovered"], 340.15, subd. (a)(2) ["[w]ithin three years from the date the plaintiff discovers or reasonably should have discovered"], 340.2, subd. (a)(2) ["[w]ithin one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known"], 340.5 ["one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered"].) This policy of charging plaintiffs with presumptive knowledge of the wrongful cause of an injury is consistent with our general policy encouraging plaintiffs to pursue their claims diligently. (*Norgart, supra,* 21 Cal.4th at p. 395.)

■ In order to rely on the discovery rule for delayed accrual of a cause of action, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." (*McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 160 [86 Cal.Rptr.2d 645].) In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to "show diligence"; "conclusory allegations will not withstand demurrer." (*Ibid.*)

■ Simply put, in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that

---

[2] At common law, the term "injury," as used in determining the date of accrual of a cause of action, "means both 'a person's physical condition *and* its "negligent cause." ' " (*Gutierrez v. Mofid, supra,* 39 Cal.3d at p. 896, quoting *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, 99 [132 Cal.Rptr. 657, 553 P.2d 1129].) Thus, physical injury alone is often insufficient to trigger the statute of limitations.

cause of action when the investigation would have brought such information to light. In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period.

 Under the statute of limitations applicable to this case, a plaintiff must bring a cause of action for products liability within one year of accrual. (Code Civ. Proc., § 340, former subd. 3.)[3] Products liability claims brought under either negligence or strict liability theories are subject to delayed accrual under the discovery rule. (See *Fireman's Fund Ins. Co. v. Sparks Const., Inc.* (2004) 114 Cal.App.4th 1135, 1150 [8 Cal.Rptr.3d 446].) Normally, the general rule for defining the accrual of a cause of action should govern a cause of action for products liability. (See *Norgart, supra*, 21 Cal.4th at p. 404.) For both negligence and strict liability products liability claims, the last element to occur is generally, as a practical matter, the injury to the future plaintiff.

Fox alleges that she was injured by an "Ethicon GIA-type stapler" on April 10, 1999. She timely filed her medical malpractice claim on June 28, 2000.[4] Her cause of action for products liability was alleged for the first time in the first amended complaint filed on November 28, 2001, more than one year after her injury. Accordingly, Fox's products liability action would only be timely if the discovery rule acted in some fashion to delay accrual of the cause of action.[5]

---

[3] At present, the statute of limitations for an action for injury to an individual caused by the wrongful act or neglect of another must be commenced within *two* years from the date of accrual. (Code Civ. Proc., § 335.1.) This change was effected in 2002, when the Legislature found the one-year limitations period of section 340, former subdivision 3 "unduly short" and adopted a two-year period "to ensure fairness to all parties." (Stats. 2002, ch. 448, § 1.)

[4] The one-year statute of limitations period for a medical malpractice action is set forth separately in section 340.5 of the Code of Civil Procedure. The limitations period prescribed by section 340.5 may be extended by 90 days under Code of Civil Procedure section 364, which provides in pertinent part: "(a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action. [¶] . . . [¶] (d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."

[5] Even had Fox filed her products liability claim against Ethicon simultaneously with her medical malpractice claim on June 28, 2000, the claim would likely still have been untimely absent an application of the delayed discovery rule. Fox filed her medical malpractice claim slightly more than one year after her injury on April 6, 2000, due to the above mentioned 90-day extension afforded medical malpractice claims by Code of Civil Procedure section 364, subdivision (d). However, the 90-day extension of the limitations period provided by section 364, subdivision (d) is limited to claims "based upon" professional negligence (see *Preferred*

The Court of Appeal below applied the discovery rule to Fox's products liability claims against Ethicon, and ordered that the trial court judgment sustaining the demurrer without leave to amend be reversed and that the case be remanded to the trial court with directions to enter an order sustaining the demurrer with leave to amend the cause of action for products liability.

 "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, . . . [t]he reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317] (*Aubry*); *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "[I]t is error for a . . . court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory." (*Aubry, supra,* 2 Cal.4th at p. 967, citing *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817].) "[I]t is [also] an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility [that the] defect . . . can be cured by amendment." (*Aubry, supra,* 2 Cal.4th at p. 967, citing *Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

 This procedural posture differs from that of our prior cases discussing delayed accrual and the discovery rule. Resolution of the statute of limitations issue is normally a question of fact. (*Jolly, supra,* 44 Cal.3d at p. 1112.) *Norgart, Jolly, Gutierrez,* and *Sanchez* involved appeals from summary judgments on the statute of limitations defense, and we therefore examined those cases in light of the undisputed material evidence presented to the court. (Code Civ. Proc., § 437c, subd. (c); see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] [a triable issue of material fact exists only if the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof].) Thus, in our prior cases discussing the discovery rule, we were presented with a more fully developed factual basis for determining when and how the plaintiff discovered an injury, whether the plaintiff conducted a reasonable investigation, when such an investigation would have brought to light the factual basis for the cause of action for which the plaintiff sought delayed accrual, and whether the plaintiff could have discovered the factual basis for a cause of action earlier by exercising reasonable diligence.

---

*Risk Mutual Ins. Co. v. Reiswig* (1999) 21 Cal.4th 208, 218 [87 Cal.Rptr.2d 187, 980 P.2d 895]; *Noble v. Superior Court* (1987) 191 Cal.App.3d 1189, 1192–1195 [237 Cal.Rptr. 38]), and would therefore not extend the limitations period for a products liability claim.

Here, however, we must assume to be true Fox's allegations that she "did not discover, nor suspect, nor was there any means through which her reasonable diligence would have revealed, or through which she would have suspected the Ethicon GIA-type stapler as a cause of her injury until the deposition of [Dr. Gladen] was taken on August 13, 2001." In addition, we also consider whether any defect in the first amended complaint could have been cured by Fox's proposed amendment to that complaint, in which she would have stated that she had no reason to suspect the stapler until after Dr. Gladen's testimony, and that no reasonable person would have suspected that the Ethicon product had malfunctioned.

In order to employ the discovery rule to delay accrual of a cause of action, a plaintiff must demonstrate that he or she conducted a reasonable investigation of all potential causes of his or her injury. Fox has only partially met this requirement by alleging that there was no way "through which her reasonable diligence would have revealed, or through which she would have suspected the Ethicon GIA-type stapler as a cause of her injury" until August 13, 2001. Fox's first amended complaint was, as the Court of Appeal below held, insufficient to withstand demurrer because it failed to allege specific facts supporting the allegations quoted above. The defect in Fox's first amended complaint, however, could have been cured by the proposed amendment to that complaint.

Fox's proposed second amended complaint would have properly alleged that the products liability cause of action did not accrue until after the stapler malfunction was revealed during the deposition of Dr. Gladen. The facts that Fox seeks to add to her complaint support her allegation that she did not suspect, nor did she have reason to discover, facts supporting a products liability action against Ethicon until after deposing Dr. Gladen. Accordingly, we conclude that the Court of Appeal did not err in ordering the trial court to grant Fox leave to amend her complaint.[6]

Ethicon, however, contends that we should adopt the more restrictive *Bristol-Myers Squibb* formulation of the discovery rule. Ethicon does not argue that the *Bristol-Myers Squibb* formulation is mandated by this court's decisions, or that we have expressly or impliedly adopted it, but rather asserts that the *Bristol-Myers Squibb* approach is consistent with our formulation of the discovery rule in prior cases.

---

[6] Although we hold that plaintiff has shown that the defect in the products liability claim in her first amended complaint could have been cured, we express no opinion on plaintiff's ability to prove that she should not have earlier suspected that her injuries were caused by a defective stapler.

In *Bristol-Myers Squibb*, the plaintiff's silicone breast implant was ruptured in an altercation in 1982. Two years later, the plaintiff learned that the implant had ruptured, that silicone was migrating down her arm, and that the silicone was a cause of physical injury in the form of ulcerations. (*Bristol-Myers Squibb, supra*, 32 Cal.App.4th at p. 962.) The plaintiff argued that because she had been told that silicone was an inert and harmless substance, she did not actually suspect the manufacturer of the implant of wrongdoing until after reading a newspaper article in late 1990. (*Id.* at p. 966.)

The Court of Appeal held that the statute of limitations on the plaintiff's products liability cause of action against the manufacturers of her silicone breast implants began to run when the statute of limitations on her medical malpractice action commenced. (*Bristol-Myers Squibb, supra*, 32 Cal.App.4th at p. 967.) As the court stated: "[w]hen a plaintiff has cause to sue based on knowledge or suspicion of negligence the statute starts to run as to *all* potential defendants," regardless of whether those defendants are alleged as wrongdoers in a separate but related cause of action. (*Id.* at p. 966.)

We have neither approved nor disapproved the *Bristol-Myers Squibb* formulation. In *Norgart*, we declined to address whether the discovery rule applied by the Court of Appeal in that case was correct,[7] or whether the more restrictive *Bristol-Meyers Squibb* standard reflected the correct rule. We expressly declined to resolve "any conflict between the holding of the Court of Appeal in *Bristol-Myers Squibb* and the holding of the Court of Appeal below," holding instead that the wrongful death cause of action at issue in that case was barred under either formulation. (*Norgart, supra*, 21 Cal.4th at p. 406.)

The Court of Appeal in the present case, after concluding that the *Bristol-Myers Squibb* formulation was not mandated by our decision in *Jolly* or adopted by this court in *Norgart*, rejected its "bright-line rule of imputed simultaneous discovery of causes of action" and concluded that "the delayed discovery of Fox's products liability claim should be analyzed based on the facts and circumstances relevant to that claim." In so holding, the Court of Appeal noted the sharp distinction drawn in our prior case law between a plaintiff's ignorance of the identity of the person who committed a suspected wrong and ignorance of the existence of a cause of action.

---

[7] In *Norgart*, the Court of Appeal had held that "under the discovery rule, when 'there are potentially multiple' 'unrelated' 'concurring causes,' a plaintiff discovers, or has reason to discover, a cause of action 'based on a particular act of wrongdoing' by a particular defendant, only when he at least suspects, or has reason to suspect, that act of wrongdoing by that defendant." (*Norgart, supra*, 21 Cal.4th at p. 406.)

■ In our previous cases addressing the discovery rule, we affirmed that ignorance of the identity of the defendant does not delay accrual of a cause of action, but that ignorance of a generic element of the cause of action does. (*Norgart, supra,* 21 Cal.4th at p. 399.) Such a distinction certainly exists in the context of a products liability action. Although the identity of the manufacturer-wrongdoer is not an essential element of a products liability cause of action, and therefore ignorance of its identity will not delay the running of the statute of limitations (see *Bernson, supra,* 7 Cal.4th at p. 932), a plaintiff's ignorance of wrongdoing involving a product's defect will usually delay accrual because such wrongdoing is essential to that cause of action. (See, e.g., *Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1060 [100 Cal.Rptr.2d 223] [triable issue of fact existed as to when the plaintiff knew or suspected wrongfulness component of products liability cause of action].)

■ It is therefore consistent with our prior applications of the discovery rule to delay accrual of a products liability cause of action even when a related medical malpractice claim has already accrued, unless the plaintiff has reason to suspect that his or her injury resulted from a defective product. More broadly stated, if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.

In both *Jolly* and *Norgart,* the plaintiffs suspected or had reason to suspect that a product had caused their injury. In *Jolly,* the plaintiff alleged injury caused by her mother's ingestion of the synthetic drug estrogen diethylstilbestrol (DES) while Jolly was *in utero.* (*Jolly, supra,* 44 Cal.3d at p. 1107.) The undisputed evidence in that case showed that, as of 1972, Jolly at least suspected that her condition was a result of her mother's ingestion of DES. (*Ibid.*) Accordingly, we held that because the plaintiff at least suspected that DES was the cause of her injuries as of 1972, the statute of limitations began to run at that time, even though Jolly was unable to establish the identity of the manufacturer of the DES ingested by her mother. (*Id.* at p. 1115.)[8]

Likewise, in *Norgart,* the daughter of the plaintiffs had committed suicide in her home by intentionally taking an overdose of prescription drugs,

---

[8] In *Jolly,* we also rejected the plaintiff's contention that the "fact" triggering accrual of her cause of action was this court's decision in *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924], in which we imposed liability on DES manufacturers even though there was a significant possibility that the manufacturer of the particular pills ingested by a plaintiff's mother was not a party to the suit. (*Id.* at pp. 610–612.)

including Halcion. (*Norgart, supra,* 21 Cal.4th at p. 390.) We upheld the superior court's grant of summary judgment against the plaintiffs, reversing the Court of Appeal, and finding that the plaintiffs had reason soon after their daughter's death to discover their causes of action for wrongful death against Upjohn for manufacturing and distributing Halcion. (*Id.* at p. 407.) More specifically, in *Norgart* we found that there was no triable issue of material fact and that Upjohn was entitled to judgment on the statute of limitations defense because the plaintiffs had reason to discover their cause of action against Upjohn soon after their daughter's death when they learned at that time of her depression and suicide by taking an overdose of prescription drugs, including Halcion. (*Ibid.*) The plaintiffs also learned of a possible connection between Halcion and the suicide, because such connection was disclosed during the plaintiffs' investigation on the drug's package insert, which warned of a possible suicide risk. (*Ibid.*)

This court's decisions in *Jolly* and *Norgart* presuppose a situation in which the factual basis for a claim was reasonably discoverable through diligent investigation. In both *Jolly* and *Norgart,* the court emphasized that the plaintiffs had ample reason to suspect the basis of their claims. (See *Jolly, supra,* 44 Cal.3d at p. 1112; *Norgart, supra,* 21 Cal.4th at p. 407.) Indeed, the application of the discovery rule as articulated in this opinion would not have yielded a different result had it been applied in either *Jolly* or *Norgart.*

The Court of Appeal in *Bristol-Myers Squibb* failed to distinguish between a plaintiff's ignorance of the identity of a particular defendant—a fact that is not an element of the underlying cause of action—and ignorance that a product was the cause of the injury. In *Norgart,* we made clear that a cause of action accrues when a plaintiff has reason to discover "a factual basis" for the claim. (*Norgart, supra,* 21 Cal.4th at p. 398.) The bright-line rule announced in *Bristol-Myers Squibb,* however, applies to all defendants regardless of whether those defendants are alleged as wrongdoers in the same cause of action, or in a separate but related cause of action alleging a wholly different kind of tortious wrongdoing. (See *Bristol-Myers Squibb, supra,* 32 Cal.App.4th at p. 966.)

As the allegations in this case illustrate, a diligent plaintiff's investigation may only disclose an action for one type of tort (e.g., medical malpractice) and facts supporting an entirely different type of tort action (e.g., products liability) may, through no fault of the plaintiff, only come to light at a later date. Although both claims seek to redress the same physical injury to the plaintiff, they are based on two distinct types of wrongdoing and should

be treated separately in that regard. Accordingly, the *Bristol-Myers Squibb* rule that all claims arising from an injury accrue simultaneously, even if based upon distinct types of wrongdoing, is inconsistent with the generic elements approach prescribed by *Norgart.* We therefore agree with the Court of Appeal below that the *Bristol-Myers Squibb* formulation is inconsistent with the iteration of the discovery rule announced in this court's earlier decisions.[9]

■ Ethicon contends that the formulation of the discovery rule used by the Court of Appeal is contrary to public policy because it would encourage plaintiffs to "wait for the facts." We disagree. A plaintiff seeking to utilize the discovery rule must plead facts to show his or her inability to have discovered the necessary information earlier despite reasonable diligence. (*McKelvey v. Boeing North American, Inc., supra,* 74 Cal.App.4th at p. 160.) This duty to be diligent in discovering facts that would delay accrual of a cause of action ensures that plaintiffs who do "wait for the facts" will be unable to successfully avoid summary judgment against them on statute of limitations grounds.

It would be contrary to public policy to require plaintiffs to file a lawsuit "at a time when the evidence available to them failed to indicate a cause of action." (*Leaf v. City of San Mateo* (1995) 104 Cal.App.3d 398, 408 [163 Cal.Rptr. 711]; see also *Enfield v. Hunt* (1979) 91 Cal.App.3d 417, 424 [154 Cal.Rptr. 146].) Were plaintiffs required to file all causes of action when one cause of action accrued, as they would be under the *Bristol-Myers Squibb* rule, they would run the risk of sanctions for filing a cause of action without any factual support. (Code Civ. Proc., § 128.5; see *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 14 [244 Cal.Rptr. 581] [holding lack of factual basis for claim to be grounds for imposing sanctions].) Indeed, it would be difficult to describe a cause of action filed by a plaintiff, before that plaintiff reasonably suspects that the cause of action is a meritorious one, as anything but frivolous. At best, the plaintiff's cause of action would be subject to demurrer for failure to specify supporting facts (see, e.g., 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 339, p. 436 [requirement of pleading facts]). In sum, the interest of the courts and of litigants against the filing of potentially meritless claims is a public policy concern that weighs heavily against the *Bristol-Myers Squibb* formulation of the discovery rule.

---

[9] As the Court of Appeal noted below, no published decision of a California or federal court has applied or cited with approval the *Bristol-Myers Squibb* formulation of the discovery rule in the nine years since it was adopted.

### III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.