PREGERSON, Circuit Judge,
dissenting:
I respectfully dissent. In affirming the district court’s grant of Firestone’s motion for summary judgment, the majority incorrectly ruled as a matter of law that California’s one-year statute of limitations[1] began to run in June 1998 when Gina San-tangelo’s attorneys sent to a tire failure analyst the Firestone Radial ATX tires removed from Santangelo’s mother’s Ford *731 Explorer. I believe that the statute of limitations began to run in August 2000. That is when Santangelo learned, through the national media, that Firestone decided to recall its Radial ATX tires.[2] It was only when that recall was publicized in the national media that Santangelo began to suspect that the accident, which killed her mother and brother and left her severely injured, was caused by a defect in the Firestone Radial ATX tires and not by her mother’s unsafe right turn in reaction to the tire tread separation, as stated in the California Highway Patrol’s accident report.[3]
Shortly after the accident, Santangelo hired two attorneys to pursue a claim against Santangelo’s mother’s insurance carrier, Farmers Insurance, not against Firestone.[4] In June 1998, Santangelo’s attorneys had the Firestone tires removed from the wrecked Ford Explorer and sent the tires to a tire failure analyst. The majority concludes that Santangelo’s attorneys first had knowledge of facts giving them reason to suspect the tires might be defective in June 1998, when the attorneys preserved the tires, engaged a tire failure analyst to inspect the tires, and inquired into the California Highway Patrol’s acei-dent report that mentioned the tire tread separation. Maj. Op. at 729. The majority also concludes that Santangelo’s attorneys’ knowledge of these facts are imputed to Santangelo.[5] Maj. Op. at 729.
Knowledge that the left rear tire tread separated and that her attorneys sent the Ford Explorer’s tires to a tire failure analyst does not demonstrate that Santangelo suspected or should have suspected that her injuries were caused by wrongdoing— here, a defect in the Firestone tires — rather than by her mother’s negligent driving or another cause, such as a failure to properly maintain the tires. See Ward v. Westinghouse Canada, Inc., 82 F.3d 1405, 1407 (1994) (“[Kjnowledge of an injury and its cause does not necessarily imply that any wrongdoing has occurred or that anyone is to blame.”). This should be particularly true here because Firestone consistently stated that “there was no evidence of a defect” in the Radial ATX tires. Bridge-stone/Firestone Tire Recall: Panel III of a Hearing Before Subcomms. on Tele-comms, Trade & Consumer Protection and Oversight & Investigations of the H. Comm, on Commerce, 106th Cong. (2000) (statement of Jacques Nasser, President and CEO, Ford Motor Company). Even *732 the Ford Motor Company, which equipped its Ford Explorer with Firestone Radial ATX tires, did not discover conclusive evidence that the tires were defective until Ford “literally pried the data from Firestone’s hands” and Ford’s engineers analyzed the data themselves. Id. This was just days before the Firestone Radial ATX tire recall in August 2000. Id.
Moreover, “[i]t would be contrary to public policy to require” Santangelo “to file a lawsuit at a time when the evidence available to [her] failed to indicate a cause of action.” Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 815, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005) (citation and internal quotation marks omitted). One of San-tangelo’s attorneys testified in a deposition that the tire failure analyst told him that there were no “defects in the tire that would have caused the tread separation, nothing in the design, manufacture, components .... ” Therefore, after the tire failure analyst presented his conclusions to Santangelo’s attorneys, the attorneys knew that there were no manufacturing or design defects in the Firestone tires that would have caused the tread separation.[6]
The attorney’s subsequent actions reinforce his testimony that the tire failure analyst told him that the was no defect in the tire. About a year after the accident, Santangelo’s attorney informed Farmers Insurance that the tire investigation did not “pan out,” and the attorney pursued a claim against Farmers Insurance, recovering the maximum policy limit of $100,000. The attorney also advised the tire failure analyst that the case was closed, and the tire failure analyst disposed of the tire. Thus, it would have been a frivolous lawsuit had Santangelo filed a complaint against Firestone after the tire failure analyst reported that there was no manufacturing or design defect in the tire. Id.
The statute of limitations was not triggered in June 1998. Because there was an investigation which disclosed only that Santangelo’s mother’s overcorrection caused the accident, and not that there was a tire defect, the discovery rule postpones the statute of limitations on the newly discovered manufacturing defect claim against Firestone. Id. at 813, 27 Cal.Rptr.3d 661, 110 P.3d 914 (“[I]f a plaintiffs reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.”).
When the evidence is viewed in the light most favorable to Santangelo, it is clear that the statute of limitations did not begin to run until Santangelo learned of the nationwide recall of Firestone Radial ATX tires in August 2000. Because Santangelo filed the present complaint against Firestone in April 2001, within one year of the August 2000 Firestone tire recall, she filed within the one-year statute of limitations period. Thus, I would reverse the district court’s grant of summary judgment in favor of Firestone and remand for further proceedings.

. On January 1, 2003, California Code of Civil Procedure § 335.1 went into effect, extending the statute of limitations for personal injury and wrongful death from one year to two years. Stats. 2002, ch. 448, §§ 2-3.

. On August 9, 2000, Firestone announced a recall of approximately 14.4 million Radial ATX, ATX II, and Wilderness AT tires, which were used as standard equipment on Ford Explorers. In December 2000, Firestone issued a report acknowledging design flaws and problems with the manufacturing process in the recalled tires.

. The California Highway Patrol’s accident report noted that the left rear tire of the Ford Explorer suffered a tire separation "[d]ue to an unknown reason” and Santangelo's mother "overreacted by turning [the Ford Explorer] hard right where she lost control.” The report also stated that three of the four tires on the vehicle showed signs of rubber deterioration and should have been replaced. In the section designated "Cause,” the report noted that Santangelo’s mother "caused this collision by being in violation of [California Vehicle Code § 22107] — Unsafe turning movement.”

. The majority states that Santangelo hired her attorneys to look into possible tire defects. Maj. Op. at 730 n. 4. Santangelo has consistently stated that she hired the attorneys to pursue a claim only against her mother’s insurance carrier, Farmers Insurance.

. Even if Santangelo's attorneys suspected that the tire was possibly defective, her attorneys' suspicion is not imputed to Santangelo. See Restatement (Third) Of Agency § 5.03 (2006) (stating that an agent's knowledge of a fact, not mere suspicion, is imputed to the principal).

. There is a genuine issue of material fact here. The tire failure analyst denied telling Santangelo’s attorney that the tire was not defective. Because we draw all factual infer-enees in favor of the non-moving party, we only should consider Santangelo's attorney's statement that the tire failure analyst told him that the tire was not defective.