**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 30 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GAIL HOLMES, | No. 13-55821 |
| Plaintiff - Appellant, | D.C. No. 5:12-cv-01708-VAP-DTB) |
| v. | |
| JOHNSON & JOHNSON, JANSSEN RESEARCH & DEVELOPMENT, LLC, and JANSSEN PHARMACEUTICALS, INC., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted April 9, 2015
Pasadena, California

Before: BENAVIDES,[**] TASHIMA, and CLIFTON, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Fortunato P. Benavides, Senior Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

1

Plaintiff-Appellant Gail Holmes ("Holmes") appeals the district court's dismissal of her claims against Defendants-Appellees Johnson & Johnson, Janssen Research & Development, LLC, and Janssen Pharmaceuticals, Inc. (collectively, "Johnson" or "Defendants"). We AFFIRM IN PART and REVERSE IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are based on allegations as set forth in the second amended complaint ("SAC"), Holmes' live pleading at the time of the district court's dismissal order. Prior to the events described below, Holmes was "a healthy individual who engaged in activities of daily living with vigor and enthusiasm." However, between September and December of 2009, Holmes' health condition dramatically deteriorated, resulting in various diagnoses and treatments during this time. She was ultimately diagnosed with Stevens Johnson Syndrome and/or Toxic Epidermal Necrolysis ("SJS/TEN"), a condition constituting "an extremely severe cutaneous adverse reaction—involving skin necrolysis, blistering, and mucous membrane destruction, through an auto-immune mechanism."

Holmes' ordeal began in early September when, on suspicion of strep throat, her doctor prescribed Levaquin, a medication manufactured by Defendants. Holmes took Levaquin as prescribed from September 10, 2009 to September 19, 2009. On September 13 and 14, Holmes visited the emergency room twice due to continued

2

strep throat symptoms and "altered mental status." On September 15, Holmes suffered a seizure and was admitted to the ICU, where she was unable to give any medical information due to intubation and sedation. Over the next four days, Holmes' doctors continued her Levaquin regimen, and added treatment on suspicion of a viral cause. On September 19, 2009, a doctor noted that Holmes was "awake and alert but could not speak in sentences and could not follow commands." Holmes then entered into a coma from which she would not wake for 15 days.

While Holmes was comatose, her condition worsened, and different doctors speculated on various causal theories which included an adverse reaction to another drug, H1N1 virus, "sepsis consistent with Toxic Shock syndrome," and SJS/TEN. On October 2, 2009, Holmes' primary doctor diagnosed her with subepidermal vesicular dermatitis.

Holmes awoke from her coma on October 4, 2009, though she remained debilitated and only communicated through "gestures and phonation." At this time, Holmes' physician affirmatively told her that she suffered from an H1N1 viral infection. Over the following two months, Holmes underwent two series of surgical procedures to remove diseased and necrotic tissue, which by then had covered a majority of her body, with an intervening treatment for septic shock resulting from wound infection. During this time, Holmes alleges that she was administered high

3

doses of pain killers and sedatives on a nearly continuous basis. Holmes was discharged on December 2, 2009, with an ultimate diagnosis of SJS/TEN on her discharge summary.

Holmes commenced this action on November 8, 2011, by filing her original complaint. Holmes later amended the complaint to include the claims against Johnson which are the subject of this appeal, specifically Holmes' claims against Johnson alleged strict product liability ("SPL") and violation of the California Business and Professions Code §§ 17200, *et seq*. ("UCL"). The district court dismissed these claims under Federal Rule of Civil Procedure 12(b)(6), and entered judgment in Johnson's favor. In doing so, the district court concluded that Holmes' SPL claim was limitations-barred, and that Holmes' UCL allegations were insufficient to state a viable claim. Holmes timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

As an initial matter, we confirm that we have jurisdiction under 28 U.S.C. § 1291. Holmes prematurely filed her notice of appeal, *see* FED. R. CIV. P. 54(b), but "subsequent events can validate a prematurely filed appeal." *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 681 (9th Cir. 1980). This is the case here since outstanding claims against other parties were subsequently dismissed, neither party to this appeal will be

4

prejudiced by the court's exercise of jurisdiction, and neither party disputes the court's jurisdiction at this point. *Cf. Fadem v. United States*, 42 F.3d 533, 535 (9th Cir. 1994).

In exercising our jurisdiction, "[w]e review *de novo* a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to allege fraud with particularity under Federal Rule of Civil Procedure 9(b)." *Reese v. Malone*, 747 F.3d 557, 567 (9th Cir. 2014) (quoting *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.,* 655 F.3d 1039, 1047 (9th Cir. 2011)). In this regard, all well-pleaded allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and footnote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation and internal quotation marks omitted). Two additional facets are pertinent here. First, the court's review may extend beyond the contents of the complaint to documents which are attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Second, under Federal Rule of Civil Procedure 9(b), claims alleging fraud must meet

5

a heightened pleading requirement and "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b).

### III. WHETHER HOLMES' SPL CLAIM IS LIMITATIONS-BARRED

#### A. Applicable Law

The district court dismissed Holmes' SPL claim as falling outside the two-year statute of limitations period prescribed for such claims under the California Code of Civil Procedure. CAL. CIV. PROC. CODE §§ 312, 335.1. Under the discovery rule, an action accrues when a plaintiff has "suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements." *See Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005). Critically, however, when a plaintiff "could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period," *id.* at 921, an action does not accrue until "the factual basis for a claim was reasonably discoverable through diligent investigation," *id.* at 924.

#### B. Discussion

The district court concluded that Holmes knew or should have known the basis of her claim on October 5, 2009, the day after waking from her coma, at which point

6

the district court found that "at least one doctor gave a possible diagnosis of SJS/TEN linked to an adverse drug reaction." As a result, the district court concluded that Holmes commenced the action outside the two-year statute of limitations period. We hold that this finding was in error for two reasons.

In the first instance, the only allegation in the SAC that a diagnosis was directly communicated to Holmes is that on October 4, 2009, her physician told her that she suffered from an H1N1 viral infection. The other allegations do not specify that a diagnosis was directly communicated to Holmes, nor do those allegations support a reasonable inference of such direct communication. In the dismissal order, the district court relied on Holmes' allegation that, on September 25, 2009, "Dr. Wolfe went on to state" a possible SJS/TEN diagnosis. However, the allegation never specifies to whom the statement was made, and the inference that the statement was made to Holmes is not only impermissible at the dismissal stage, but also highly unlikely since it is undisputed that Holmes was in a coma at the time. Moreover, even assuming the doctor "gave a possible diagnosis of SJS/TEN" to Holmes, the timing alone prevents imputing knowledge of the diagnosis to the then-comatose Holmes. Assuming Holmes' awareness of her symptoms upon awakening, Holmes expressly alleges that her doctor responded to her inquiry by explaining her condition was caused by the H1N1 virus, not a drug reaction. Over the following two months, Holmes alleges that

she had a "cloudy" mental state as she underwent two rounds of multiple surgeries and treatment for septic shock, requiring high doses of pain killers and sedatives. We therefore conclude that the district court erred in concluding that Holmes' SPL cause of action accrued prior to November 8, 2009, because that conclusion was not supported at the dismissal stage absent impermissible inference. We make no determination, however, whether Holmes' awareness during that period might otherwise be supported by evidence as the case proceeds through summary judgment and trial.

### IV. WHETHER HOLMES' UCL CLAIM IS SUFFICIENTLY ALLEGED

We next turn to the district court's dismissal of Holmes' claim that Johnson violated the California UCL, which prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." CAL. BUS. & PROF. CODE § 17200. A plaintiff can assert any of three independent grounds for a violation as "unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).

Holmes asserts that Johnson's labeling, marketing, and distribution of Levaquin—in the form of Levaquin's medication guide, FDA label, and patient insert—failed to disclose the risk of severe subcutaneous adverse reaction ("SCAR") conditions resulting from the medication. The district court considered this claim

under each of the three grounds.

Regarding her "unlawful" basis, Holmes alleged that Johnson's conduct violated misbranding or inadequate-directions-for-use prohibitions of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 352(a), 352(f) (2012), and the Sherman Food, Drug, and Cosmetic Laws ("Sherman Law"), CAL. HEALTH & SAFETY CODE §§ 111330, 111360, 111375, 111445; both the FDCA and Sherman Law are independently actionable under the UCL. *Cf. Cel-Tech Commc'ns, Inc., v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999). The district court concluded that Holmes' allegations were insufficient as merely reciting statutory language, and on appeal Holmes does not challenge that ruling by the district court. Instead, Holmes argues that Johnson violated § 17500 of the California Business and Professions Code, CAL. BUS. & PROF. CODE § 17500, as well as the Consumers Legal Remedies Act. CAL. CIV. CODE §§ 1750-84. However, Holmes did not present this argument to the district court, which did not address it; we therefore deem this argument waived. *See Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010). We therefore find no error in the district court's dismissal of this ground.

A claim under the "fraudulent" prong of the UCL requires a showing that members of the public are "likely to be deceived." *Schnall v. Hertz Corp*., 78 Cal. App. 4th 1144, 1167 (Cal. Ct. App. 2000). Holmes argued that Johnson created such

9

a likelihood by omitting risk information, and the district court dismissed this ground for failing to meet the particularity requirements of Federal Rule of Civil Procedure 9(b), as well as for failing to allege reliance on the alleged misrepresentations. Rule 9(b) requires fraud allegations to detail "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Holmes' allegations fail to specify what information was likely to deceive Holmes or her doctor, and we agree with the district court that the allegations were insufficiently specific under Rule 9(b); we therefore need not address the district court's alternative basis for dismissal.

Regarding the "unfairness" ground of Holmes' UCL claim, we have previously held that where a plaintiff alleges that the defendant engaged in "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (second omission in original) (quoting *Vess*, 317 F.3d at 1103-04). Holmes alleges that Johnson unfairly misled the public about the dangers of Levaquin by engaging in the same activity which forms the basis of her fraudulent ground. Accordingly, we hold that her claim is similarly subject to the particularity requirements of Rule 9(b), and similarly fails

to satisfy those requirements. We therefore find no error in the district court's dismissing Holmes' unfairness ground on this basis, and we need not address the district court's alternative basis for dismissal.

## V. Conclusion

For the foregoing reasons, we **AFFIRM IN PART** the district court's judgment as to Holmes' UCL claim, but **REVERSE IN PART** the judgment as to Holmes' SPL claim. Each party shall bear its own costs.

**AFFIRMED in part; REVERSED in part; REMANDED.**