NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 12 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HANI MAIM SAEED SHARAF, | No. 16-55301 |
| Plaintiff-Appellant, | D.C. No. 8:14-cv-00541-JVS-DFM |
| and | |
| SALIM ELHALWANI, | MEMORANDUM* |
| Plaintiff, | |
| v. | |
| STARBUZZ TOBACCO, INC., a California Corporation, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted November 7, 2017
Pasadena, California

Before: BERZON and WATFORD, Circuit Judges, and PAYNE,** District Judge.

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Robert E. Payne, United States District Judge for the Eastern District of Virginia, sitting by designation.

Hani Sharaf appeals the district court's grant of summary judgment in favor of Starbuzz Tobacco, Inc. ("Starbuzz") on his breach of contract and fraud claims related to Starbuzz's alleged failure to perform under a 2005 agreement ("the 2005 Agreement"). According to Sharaf, the 2005 Agreement required him[1] to set up an entire tobacco manufacturing process at a Starbuzz facility in the United States. In return, Sharaf was promised a substantial ownership interest. Sharaf argues that although he completed his obligations, Starbuzz did not provide the ownership interest,[2] thereby committing the contractual breach at issue.

It is difficult to discern the nature of Sharaf's fraud claim. However, construed generously, it seems to be for fraud in the inducement to enter the 2005 Agreement. No other fraud theory can be discerned.

Because the District Court correctly held that both claims are barred by their respective statutes of limitations, we affirm.[3]

---

[1] The 2005 Agreement called for both Hani Sharaf and his uncle, Bassam Sharaf, to perform duties related to setting up a tobacco manufacturing plant and process for Starbuzz in the United States. Bassam is not a party to this suit. For simplicity, however, we refer simply to "Sharaf's" duties under the Agreement.

[2] The 2005 Agreement also called for Starbuzz to employ Sharaf, but that aspect of the contract is not at issue.

[3] As we affirm the grant of summary judgment, we do not consider the damages issues raised by Starbuzz, which are implicated only if either of Sharaf's claims survives summary judgment.

16-55301

1.      Sharaf has not provided sufficient evidence to raise a triable issue of fact as to whether his breach of contract claim accrued less than four years before the date on which he filed suit, so as to satisfy the applicable statute of limitations. *See* Cal. Civ. Proc. Code § 337(1). That claim arises from Starbuzz's failure to issue Sharaf his ownership interest after he completed his obligations under the 2005 Agreement. Thus, the relevant question is when Sharaf's performance triggered Starbuzz's obligation to perform.

The plain language of the 2005 Agreement at least required Sharaf to equip Starbuzz's U.S. factory with tobacco manufacturing equipment and set up the production process there. *See* Cal. Civ. Code § 1638 (contract language governs unless ambiguous). Although the full scope of Sharaf's commitments under Article Eight is not entirely clear, we may resolve that ambiguity based on the language of the whole contract. *See Lockwood v. Wolf Corp.*, 629 F.2d 603, 609-10 (9th Cir. 1980); *see also* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, . . . each clause helping to interpret the other."). Article Eight is a general provision indicating that Sharaf shall produce tobacco, but Article Eleven describes his duties more narrowly, in terms of equipping the factory and setting up the production process. Thus, Article Eight's broad statement is narrowed by the specific instructions of Article Eleven.

The uncontroverted evidence shows that by early 2009, Sharaf had

3                                                    16-55301

sufficiently satisfied his obligations under Articles Eight and Eleven to put him on inquiry notice of Starbuzz's alleged breach at that time. *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110–11 (1988). Sharaf himself stated that his efforts to set up the equipment and produce tobacco at Starbuzz's factory were successful then.[4] He nonetheless maintains that he did not complete performance until early 2011, when he finished setting up "processes related to product development, sales, packaging, shipping, manufacturing staff training and supervision, and accounting of production"—tasks that he contends are contemplated by Article Eleven. But we need not credit interpretations to which the plain language of the contract is not "reasonably susceptible." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 96-97 (9th Cir. 1983). Nothing in Article Eleven or the rest of the 2005 Agreement supports Sharaf's reading, and his broad construction of the phrase "whatever else is required in the production process" to include matters not directly involving production is inconsistent with the narrow meaning of the enumerated items immediately preceding that phrase in Article Eleven. *See Yates*

---

[4] We note that even if Article Eleven does not narrow Article Eight, we would still affirm summary judgment for Starbuzz on an alternative ground. There is no record evidence that Sharaf ever produced commercial tobacco in the United States. Although Sharaf states in his declaration that his "efforts to . . . produce Mu'assal tobacco" in the United States were successful, that statement does not contradict Starbuzz's and Bassam Sharaf's assertions that Mu'assal tobacco was produced, but that it was unfit for use and unsalable. As Sharaf cannot show full performance if Article Eight is read in isolation, he never became entitled under the Agreement to an ownership interest on that reading.

*v. United States*, 135 S. Ct. 1074, 1086 (2015). Sharaf's explanation of Article Eleven's scope is thus unreasonable. His other arguments about the effect of Articles Twelve and Thirteen are equally unavailing, and in any event, are inconsistent with the delegation of certain responsibilities to Starbuzz alone in Article Nine.

For these reasons, we affirm the district court's grant of summary judgment in Starbuzz's favor on Sharaf's breach of contract claim because the claim accrued in or around early 2009 and Sharaf did not file suit until April 8, 2014.

2. Having affirmed the district court's grant of summary judgment on the breach of contract claim on statute of limitations grounds, we do not address whether the district court erred in concluding that the 2005 Agreement was impliedly rescinded by the parties' subsequent conduct. *See Hardie v. Nat'l Collegiate Athletic Ass'n*, 876 F.3d 312, 318 (9th Cir. 2017) ("We . . . may affirm on any basis supported by the record.") (internal quotations omitted).

3. Sharaf has similarly failed to show a genuine dispute of fact about whether he discovered Starbuzz's fraud less than three years before April 8, 2014. *See* Cal. Civ. Proc. Code § 338(d). Under California law, a fraud claim does not accrue until the plaintiff's discovery of facts constituting the fraud. In this context, "discover" can mean either actual discovery, or instead when there was "reason to discover" the fraud—that is, when Sharaf "'ha[d] reason at least to suspect a

factual basis for [the] elements'" of the claim. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 398 (1999)).

The district court's finding that Sharaf had reason to discover the fraud when Starbuzz, in or around early 2009, failed to perform as promised in the 2005 Agreement was not clear error. *Erlin v. United States*, 364 F.3d 1127, 1130 (9th Cir. 2004). Sharaf's argument to the contrary rests entirely on his assertion that he did not complete performance under the 2005 Agreement until early 2011. But, for the reasons discussed above, that contention fails.

The record further supports the district court's conclusion that Sharaf was on inquiry notice of Starbuzz's alleged fraud in or around early 2009. At that time, Starbuzz failed to provide Sharaf with his ownership interest after he completed performance under the 2005 Agreement. Sharaf was thus "aware of facts which would make a reasonably prudent person suspicious" that Starbuzz's representations that it would perform under the 2005 Agreement[5] were fraudulent. *Lee v. Escrow Consultants, Inc.*, 210 Cal. App. 3d 915, 921 (Cal. Ct. App. 1989). The only evidence that could create a dispute on this point is Sharaf's subjective contention that he was not suspicious of Starbuzz's fraudulent representations

---

[5] Sharaf's fraud claim is based solely on Starbuzz's statements to this effect in October 2005, when the 2005 Agreement was executed. He does not argue that Starbuzz made additional misrepresentations between 2009 and 2011 that might have affected the statute of limitations.

before 2011, which is misplaced in this objective analysis. Moreover, there is no evidence that Sharaf could not have discovered Starbuzz's fraud in or around early 2009 by conducting a reasonable investigation, such as by asking Starbuzz about the ownership interest or by making a written demand. *See Fox*, 35 Cal. 4th at 808 ("[A] plaintiff whose . . . claim would be barred without the benefit of the discovery rule must specifically plead facts to show . . . the inability to have made earlier discovery despite reasonable diligence.") (internal quotations omitted).

Based on these undisputed facts, Sharaf was on inquiry notice of Starbuzz's fraud in or around early 2009. Accordingly, we affirm the district court's grant of summary judgment in Starbuzz's favor on Sharaf's fraud claim, because Sharaf did not bring that claim until April 8, 2014.

**AFFIRMED.**