Filed 1/25/21  Chow v. Szeto & Company etc. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HOWARD CHOW et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>SZETO & COMPANY ACCOUNTANCY CORPORATION et al.,<br><br>Defendants and Respondents. | B298523<br><br>(Los Angeles County Super. Ct. No. BC676964) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

John L. Dodd & Associates and John L. Dodd; Law Office of Robert E. Gibson and Robert E. Gibson for Plaintiffs and Appellants.

Shaw Koepke & Satter and Jens B. Koepke for Defendants and Respondents.

_____

In this action alleging accountancy malpractice, defendants Szeto & Company Accountancy Corporation, and accountants Leo Szeto and Josie Hung (collectively, the Szeto defendants) successfully moved for summary judgment on the ground the action is barred by the two-year statute of limitations set forth in Code of Civil Procedure section 339, subdivision (1).[1] Plaintiffs Howard Chow and Yi Hua Chen (collectively, Chow)[2] appeal from the judgment, contending the trial court erred in granting the summary judgment motion because they showed triable issues of material fact regarding whether they discovered or had reason to discover their causes of action within the statute of limitations period. We affirm the summary judgment.

## BACKGROUND

### I. Third Amended Complaint

On September 22, 2017, Chow filed this accountancy malpractice action against the Szeto defendants (and other tax firms and professionals that Chow later dismissed from the action before the summary judgment stage). In the operative third amended complaint, filed on June 19, 2018, Chow asserted causes of action against the Szeto defendants for negligence and breach of oral contract. The crux of Chow's causes of action is

---

[1] Further statutory references are to the Code of Civil Procedure.

[2] Chow and Chen were married at all relevant times. In his declaration in opposition to the Szeto defendants' motion for summary judgment, Chow stated he handled the family tax matters at issue in this action, and Chen did not communicate directly with the Szeto defendants. Hence, for practicality and ease of reference, we refer to plaintiffs Chow and Chen collectively as Chow.

2

that in August 2011—more than six years before Chow filed this action—the Szeto defendants erred in carrying back Chow's 2009 tax losses (net operating losses from Chow's businesses and losses from the foreclosure of a commercial property) to the 2006 tax year. The Szeto defendants did not prepare Chow's original 2006 personal income tax return. They prepared Chow's 2009-2013 personal income tax returns.[3] They also prepared Chow's amended 2006 personal income tax return, which (along with the 2009 personal income tax return) is the return Chow asserts they prepared incorrectly.[4] Chow explained in the third amended complaint that he "instructed the Szeto [d]efendants to carryback [*sic*] [the] 2009 tax losses to the 2006 tax year, to eliminate or reduce" the 2006 tax liability of approximately $396,000.

Chow also alleged in the third amended complaint that due to his reliance on the Szeto defendants' tax expertise, he could not have discovered their negligence/breach of contract until

---

[3] Chow also asserted in the third amended complaint that the Szeto defendants untimely filed his 2009 and 2012 personal income tax returns. Chow acknowledged during the proceedings below that he claimed no damages because of the Szeto defendants' alleged untimely filing of the 2009 and 2012 tax returns, as he was not penalized because he overpaid income taxes during those years. The refunds apparently were used to reduce Chow's outstanding tax liability. The parties' statute of limitations analyses do not address the alleged untimely filing of the tax returns.

[4] There is no evidence in the record indicating accountant Josie Hung (one of the Szeto defendants) was involved in the preparation of, or communicated with Chow about, the tax returns at issue in this action. We need not address this issue further based on our conclusion Chow's action against all the Szeto defendants is barred by the statute of limitations.

August 2016—five years after the acts constituting the alleged negligence/breach of contract—when a new accountant he had recently hired informed him the 2009 losses "were not fully applied to the 2006 tax year to reduce or eliminate the 2006" unpaid tax liability. Chow further alleged he "did not suffer any damage that would have put [him] on notice or aroused suspicions of [the Szeto defendants]' negligence or contract breaches" until September 27, 2016, when the Internal Revenue Service (IRS) sold Chow's 50 percent interest in an entity called Poplar LLC to cover his outstanding tax liabilities.[5] Chow asserted in the third amended complaint that the Szeto defendants' "negligence was a substantial factor in causing [Chow] to suffer damages of at least $6 million."

## II. Motion for Summary Judgment

In January 2019, the Szeto defendants moved for summary judgment, arguing, among other things, Chow's action is barred as a matter of law by the two-year statute of limitations set forth in section 339, subdivision (1).[6] The evidence the Szeto defendants presented with their summary judgment motion established, in pertinent part, the following:

In 2010, Chow asked the Szeto defendants to prepare tax forms to carry back 2009 tax losses to the 2006 tax year to eliminate or reduce Chow's 2006 outstanding tax liability. On

---

[5] After Chow lost a commercial property in Fontana to foreclosure in 2009, Poplar LLC repurchased the property later the same year.

[6] Chow agrees the two-year statute of limitations set forth in section 339, subdivision (1) applies to his causes of action against the Szeto defendants for negligence and breach of contract.

4

December 3, 2010, Chow sent an e-mail to accountant Leo Szeto (Szeto), informing Szeto the IRS had instructed that Chow needed to file form 6251 (titled "Alternative Minimum Tax—Individuals"), with lines 10 and 27 filled in, to carry back his 2009 net operating losses to 2006.

Nearly eight months later, on July 25, 2011, Chow sent an e-mail to Szeto, explaining he (Chow) had "just spok[en] with the IRS" and was informed the IRS required further information to carry back the 2009 net operating losses to 2006: an amended form 1040 (income tax return) for 2006 and a completed form 6251 with line 10 filled in ("[i]ncorporating NOL [net operating losses]," as Chow explained in the e-mail) and line 27 filled in (with "amount and NOL Computation," as Chow set forth in the e-mail). Chow's e-mail indicated the form 6251 Chow had submitted previously for 2006 "was [i]ncomplete." Chow also stated in the e-mail: "This [information regarding the tax information required by the IRS] was conveyed to you last year. I recall earlier emails to this effect. There is no point for me to just resend in the [2006 tax forms submitted previously] if they are incomplete."

Two days later, on July 27, 2011, Chow sent Szeto an e-mail, stating he had received a "package in the mail" from Szeto. (The contents of the package are not identified in the e-mail.) Chow reiterated in this e-mail the list of tax documents the IRS required for 2006, including form 6251 with lines 10 and 27 filled in. Chow asked Szeto, "What do you want me to do?" Szeto responded the same day, with an e-mail to Chow stating, "I'll try to understand what they want."

On July 29, 2011, Szeto sent Chow an e-mail, attaching an amended form 1040 for 2006, as well as a form 6251 for 2006

with line 10 (net operating loss deduction from form 1040, line 21) filled in, but line 27 (alternative tax net operating loss deduction) left blank. Szeto stated in the e-mail that he had "worked the file for a few hours" and, as reflected in the 2006 tax documents attached to the e-mail, Chow's refund for 2006 "was only $36,810.00." Szeto further stated that he would send Chow the entire tax file for 2006, and Chow "could sign the tax return and send to the IRS for processing."

The same day, July 29, 2011, Chow responded, asking in an e-mail to Szeto: "How are you coming up with the Part 1 Line 28 – Alternative minimum Taxable Income of 1,202,160 [on form 6251]???? [¶] Do we have to complete form 6251 to get this outcome? This cannot be. A K1 of 814,000 [net operating loss] resulting in a net return [refund] of 36,810???" On August 1, 2011, Chow followed up with another e-mail to Szeto stating, "The 2009 refund of 36000.00 [*sic*] cannot be correct. I cannot see how that can be. I will call you tomorrow. What is a good time?" Szeto replied that day, scheduling a time for the two to talk.

On August 3, 2011, Szeto sent Chow an e-mail stating: "I checked the entire file. Due to the AMT [alternative minimum tax] items were too much [*sic*], such as mortgage interest and NOL [net operating loss] fill in the 6251 [*sic*]. The refund is only $36,000 for the carryback year 2006. You can send the forms that I have sent you to the IRS." Chow and Szeto had no further discussion regarding the 2006 amended personal income tax return or the carryback losses. As summarized above, there was no discussion in these e-mails regarding the 2009 foreclosure losses (although Chow asserts in this action that he informed the Szeto defendants before August 3, 2011 about the 2009 foreclosure of the Fontana property).

On or about August 18, 2011, Chow filed the 2006 amended tax return, with line 27 on form 6251 left blank. Chow's refund was hundreds of thousands of dollars less than he expected when he asked Szeto to carry back the 2009 losses to the 2006 tax year. Chow filed this action on September 22, 2017, more than six years after he filed the tax documents he alleges the Szeto defendants erroneously prepared.

## III. Opposition to Motion for Summary Judgment

The declaration of Howard Chow is the only evidence Chow presented in opposition to the Szeto defendants' motion for summary judgment. In pertinent part, Chow stated the following in the declaration:

He has "fairly limited knowledge regarding accounting practices" and has relied on accounting professionals, including the Szeto defendants, "to represent [his] interests and competently prepare [his family's] taxes and present [their] case to the IRS." In July 2011, when he was corresponding by e-mail with Szeto as set forth above, he "didn't specifically know what form 6251 was, or the impact lines 10 and 27 had on the amount of [his] taxes." He relied on "Szeto's representations that he had taken care of the items [Chow] had told him about in [Chow's] prior email." Chow believed the refund "should be higher," so he questioned Szeto about "how he was coming up with the total alternative minimum taxable income." During a call on August 2, 2011, Szeto told Chow "repeatedly that there was no basis for a higher refund" and "reassured [Chow] that the calculations for the Alternative Minimum Tax and the Net Operating Losses were correct." In signing the 2009 and 2006 amended tax returns, Chow relied on Szeto's "experience in the accounting

7

profession" and Szeto's representations "that his calculations were correct and the returns were prepared properly."

In May 2016, Chow retained another accountant. The new accountant informed Chow on or about August 16, 2016 "that some of the losses identified on [Chow's] 2009 personal income tax returns were not fully applied to the 2006 tax year which could have been used to reduce or eliminate [Chow's] 2006 personal income tax liability." Chow further asserted in his declaration he "could not have discovered the [Szeto defendants'] negligence or breaches of contract prior to August 16, 2016" due to his reliance on the Szeto defendants' "expertise, statements, and advice" and his belief they "were competently handling [the] tax matters." Chow also stated he first believed he might have been injured by the Szeto defendants' negligence when the IRS seized his interest in Poplar LLC and then sold it on September 27, 2016.

In the written opposition to the motion for summary judgment, Chow reiterated the assertion in his declaration that he did not discover the Szeto defendants' negligence or breaches of contract until more than five years after the Szeto defendants committed the acts, due to his reliance on the Szeto defendants' "professional accounting expertise" and repeated assurances "that the items [Chow brought to Szeto's attention] had been addressed and [Szeto's] calculations were correct." Chow argued he filed this action less than two years after he discovered or should have discovered the Szeto's negligence/breaches of contract and any injury caused by those acts. Chow further argued the issue of whether he "*reasonably* relied on Szeto's repeated representations he had reviewed the file and checked the calculations is a question of fact for the jury."

8

## IV.    Ruling and Judgment

After hearing oral argument, the trial court granted the Szeto defendants' motion for summary judgment, concluding Chow's action is barred as a matter of law by the two-year statute of limitations set forth in section 339, subdivision (1).  On April 16, 2019, the court entered judgment in favor of the Szeto defendants and against Chow.

## DISCUSSION

## I.    Standard of Review

A trial court should grant summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (§ 437c, subd. (c).)  A defendant may establish a right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action.  (§ 437c, subd. (p)(2).)  Once the moving defendant has satisfied this burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to each cause of action.  (*Ibid*.)  A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained."[7]

---

[7] The trial court declined to rule on Chow's objections to the Szeto defendants' evidence in support of the summary judgment motion because Chow set forth his objections in the separate

9

(*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66.)  We view the evidence and the inferences reasonably drawn from the evidence "in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

## II.     Statute of Limitations and the Discovery Rule

As the parties agree, the two-year statute of limitations set forth in section 339, subdivision (1) applies to Chow's causes of action against the Szeto defendants for negligence and breach of oral contract.  (*Apple Valley Unified School Dist. v. Vavrinek, Trine, Day & Co.* (2002) 98 Cal.App.4th 934, 942 (*Apple Valley*) ["the statute of limitations for malpractice by an accountant is two years" under section 339, subdivision (1)].)  Thus, Chow was required to bring his causes of action within two years after the causes of action accrued.  (§ 312 ["Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued"].)

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.]  An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806-807 (*Fox*).)  "A plaintiff has reason to discover a

statement of material disputed and undisputed facts in support of his opposition instead of in a separate document.  (Cal. Rules of Court, rule 3.1354 (b) ["All written objections to evidence must be served and filed separately from the other papers in support of or in opposition to the motion"].)  On appeal, Chow does not challenge this ruling or reference the objections to the Szeto defendants' evidence.

10

cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.]  Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Id*. at p. 807.)  "Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Ibid*.)  "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." (*Ibid*.)

"Simply put, in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury.  If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." (*Fox, supra*, 35 Cal.4th at pp. 808-809.)  "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co*. (1988) 44 Cal.3d 1103, 1111.)  "These principles apply in accounting malpractice actions." (*Apple Valley, supra*, 98 Cal.App.4th at p. 943.)

To successfully proceed on a theory of delayed discovery, the plaintiff must plead and prove that, "despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox, supra*, 35 Cal.4th at p. 809; *Czajkowski v. Haskell & White, LLP*

11

(2012) 208 Cal.App.4th 166, 174.)  Where a plaintiff alleges delayed discovery based on his reliance on the assurances of a professional, his causes of action will only be barred by the statute of limitations "if his conduct is manifestly unreasonable in the light of his own intelligence or information." (*Czajkowski*, at p. 175.)

   " 'The resolution of a statute of limitations defense is typically a factual question for the trier of fact.  However, summary judgment is proper if the court can draw only one legitimate inference from the uncontradicted evidence about the limitations issue.' " (*Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 323-324; see *Fox*, *supra*, 35 Cal.4th at p. 810 ["Resolution of the statute of limitations is normally a question of fact"; appeals from summary judgments, in contrast to appeals from judgments entered after the sustaining of demurrers, however, present "a more fully developed factual basis for determining," based on undisputed material facts, "when and how the plaintiff discovered an injury, whether the plaintiff conducted a reasonable investigation, when such an investigation would have brought to light the factual basis for the cause of action for which the plaintiff sought delayed accrual, and whether the plaintiff could have discovered the factual basis for a cause of action earlier by exercising reasonable diligence"].)

## III.    As a Matter of Law, This Action is Barred by the Statute of Limitations

   Chow contends the trial court erred in granting summary judgment on statute of limitations grounds, arguing he showed triable issues of material fact as to (1) whether he was on inquiry notice of his causes of action in 2011 or 2016, and (2) whether his reliance "on the presumed superior knowledge of the professional

accountants" was reasonable.  For the reasons explained below, we conclude the undisputed material facts—principally Chow's e-mail exchanges with Szeto—demonstrate Chow was on inquiry notice of his negligence and breach of contract causes of action against the Szeto defendants in August 2011, and this action, filed more than six years later, is barred as a matter of law by the two-year statute of limitations set forth in section 339, subdivision (1).

Undisputed facts establish:  Chow asked Szeto to carry back 2009 losses to the 2006 tax year, believing it would eliminate or substantially reduce his 2006 tax liability of approximately $396,000.  Chow had consulted with the IRS, and the IRS informed him that, in order to carry back the 2009 losses to 2006, he needed to file a form 6251 for tax year 2006 with lines 10 and 27 filled in.  In December 2010, Chow conveyed the instruction he had received from the IRS to Szeto.

In July 2011, Chow had another discussion with the IRS, and the IRS informed him the information he had submitted to the IRS was insufficient to carry back his 2009 losses to 2006 because it was incomplete.  The IRS reiterated that Chow needed to file a form 6251 for tax year 2006 with lines 10 and 27 filled in, as well as an amended form 1040 for 2006.  On July 25, 2011, Chow again conveyed this information to Szeto.  Two days later, on July 27, 2011, after receiving a package of tax documents from Szeto, Chow again informed Szeto what documents and specific information in those documents the IRS required to carry back the 2009 losses to 2006.  Szeto responded that he would try to understand what information the IRS wanted Chow to provide.

Chow's July 29 and August 1, 2011 e-mails to Szeto demonstrate Chow was shocked when Szeto produced tax

13

documents showing a refund of only $36,810, hundreds of thousands of dollars less than Chow expected.  In both e-mails, Chow asserted Szeto's calculations could not be correct.  After further discussions with Szeto, Chow signed and filed the 2006 amended form 1040 and the 2006 form 6251.  Although the IRS had told Chow on multiple occasions that the form 6251 needed to have both lines 10 and 27 filled in for Chow to carry back his 2009 losses to 2006, Chow signed and filed the 2006 form 6251 with line 27 left blank.

Based on the above undisputed facts, in August 2011, Chow was on inquiry notice (1) that Szeto had prepared the 2006 tax documents incorrectly, and (2) that Szeto's error had injured him in that his refund was hundreds of thousands of dollars less than he expected it to be based on his net operating losses.  Chow's e-mails demonstrate unequivocally his suspicions that Szeto's calculations were incorrect.

Based on the above undisputed facts, in August 2011, Chow was on inquiry notice (1) that Szeto had prepared the 2006 tax documents in a manner that did not comply with the instructions Chow received from the IRS and conveyed to Szeto, and (2) that the amended return prepared by Szeto resulted in an injury to Chow—a refund that was hundreds of thousands of dollars less than Chow expected it to be based on his net operating losses.  Chow's e-mails demonstrate unequivocally he had reason to suspect that Szeto's calculations were incorrect.

Chow argues the two-year statute of limitations applicable to his causes of action did not begin to run in August 2011 because Szeto assured him the calculations were correct, and he was entitled to rely on his tax professional's assurances.  He cites *Neel v. Magana, Olney, Levy Cathcart & Gelfand* (1971) 6 Cal.3d

14

176, 188, for the proposition that a client need not "hire a second professional to observe the work of the first" where the client does not have the ability to "detect [the] misapplication" of the professional's special expertise.  In other words, a client need not conduct an investigation in search of error in his tax documents where he suspects none.  The client does have a duty to investigate, however, "even where a fiduciary relationship exists when 'he has notice of facts sufficient to arouse the suspicions of a reasonable man.'  [Citation.]  If such facts actually do come to his attention he may not sit idly by for at that point the statute of limitations begins to run." (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 855.)

The Szeto defendants did not conceal any material facts from Chow in August 2011 that would have prevented Chow from discovering the alleged negligence/breach of contract, as the tax professionals did in cases on which Chow relies.  (See, e.g., *L.B. Laboratories, Inc. v. Mitchell* (1952) 39 Cal.2d 56, 58-59.)  A tax professional's failure to tell the plaintiff that he "might have grounds for a negligence or malpractice cause of action under the facts known to all parties" does not toll the statute of limitations. (*Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 502.)  It "is not necessary for the plaintiff to have knowledge of the specific applicable legal theories in order for the statute of limitations to accrue."  (*Ibid*.)

The facts Chow knew in August 2011 undisputedly aroused his suspicions that Szeto had prepared the 2006 tax documents incorrectly and that Szeto's error had injured him in that his refund was hundreds of thousands of dollars less than he expected it to be based on his net operating losses.  Thus, the statute of limitations began to run in August 2011, and Chow

15

was required to conduct a reasonable investigation based on his suspicions. Instead, he waited for the facts to find him. Five years later, in August 2016, a new accountant he hired allegedly confirmed his suspicions that his refund would have been hundreds of thousands of dollars larger if Szeto had included the loss deduction in line 27 on form 6251, just like the IRS told Chow in December 2010 and July 2011 that he needed to do to carry back his 2009 losses to 2006, and just like Chow instructed Szeto to do. By that point, however, Chow's causes of action were barred by the two-year statute of limitations.

The trial court did not err in granting the Szeto defendants' motion for summary judgment on the ground Chow's action is barred by the two-year statute of limitations set forth in section 339, subdivision (1). The undisputed facts establish as a matter of law that Chow was on inquiry notice of his causes of action against the Szeto defendants in August 2011, and the statute of limitations began to run at that time. Based on his suspicions that Szeto's calculations were incorrect and his refund was substantially less than he expected it to be, coupled with the fact that Szeto had not completed the forms in the manner the IRS instructed, Chow was required to investigate. Instead, he ignored his suspicions for five years and filed this action more than six years after he was on inquiry notice of his causes of action. The action is time-barred.

16

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

FEDERMAN, J.*

_____

 * Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.