Filed 3/14/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EMILIO CARRILLO, | B322810 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 19CV342118) |
| v. | |
| COUNTY OF SANTA CLARA, | ORDER MODIFYING OPINION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT*

It is ordered that the opinion filed March 13, 2023 be modified as follows:

On page one, on the caption page, as to the Santa Clara County Superior Court case number, replace the case number "19CV43225" with "19CV342118" .

The modification does not change the judgment.

_____

_____

COLLINS, ACTING P.J.          CURREY, J.

*SCADUTO, J.

*          Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.

Filed 3/13/23 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| EMILIO CARRILLO, | B322810 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 19CV43225) |
| v. | |
| COUNTY OF SANTA CLARA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Santa Clara County, Mark H. Pierce, Judge. Affirmed.

Law Office of Bobby Lau and Babach "Bobby" Lau for Plaintiff and Appellant.

James R. Williams, County Counsel (Santa Clara) and Kim H. Hara, Deputy County Counsel, for Defendant and Respondent.

# INTRODUCTION

Appellant Emilio Carrillo appeals from a judgment of dismissal of his medical negligence claim against respondent County of Santa Clara after the trial court sustained the County's demurrer without leave to amend on statute of limitations grounds. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. *Carrillo Sues the County for Medical Negligence*

On January 18, 2019, Carrillo sued the County and Does 1 through 50 for medical negligence and battery. Carrillo withdrew the battery claim when he filed a first amended complaint on June 7, 2019. In the FAC, Carrillo alleged that, in December 2017, while in the custody of the County's Department of Corrections, he developed a "large blister on the bottom of his right foot." A County nurse identified in the complaint as Doe 1 "popped" the blister over his objection while he was restrained, resulting in an "open and exposed wound." Within three days, the wound became infected, and Carrillo developed gangrene, became febrile, and went into septic shock. He was admitted to Santa Clara Valley Medical Center, where his right foot was amputated on December 20, 2017, "[d]ue to the damage from the infection and its related symptoms."

In April 2018, he visited the Mexican Consulate in San Jose to obtain guidance on immigration matters. While

there, "the subject of his right foot amputation came up" and Carrillo "'became informed and on that basis believed'" that the nurse's treatment of his blister caused the gangrene and septic shock, which in turn led to the amputation. On June 18, 2018, he presented a "Notice of Claim" to the County for medical negligence, which the County rejected on July 19, 2018. Carrillo filed his initial complaint on January 18, 2019, one day shy of six months after that rejection.

## B. *The County Demurs*

On July 12, 2019, the County demurred to Carrillo's FAC. The County argued that Carrillo's medical negligence claim was time-barred, citing Code of Civil Procedure section 340.5 (MICRA),[1] which provides that a plaintiff must file suit "within three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (Code Civ. Proc., § 340.5.) Because Carrillo's foot was amputated on December 20, 2017, the County argued he was required to file suit no later than December 20, 2018, making his January 18, 2019, complaint untimely.

The County characterized as irrelevant Carrillo's assertion that he did not begin to suspect medical negligence was the cause of his injury until April 2018, as there could be "no question but that a reasonable person having his foot

---

[1] MICRA is the Medical Injury Compensation Reform Act. (*Anson v. County of Merced* (1988) 202 Cal.App.3d 1195, 1199 (*Anson*).)

amputated under such circumstances would necessarily be on notice that something was wrong." The County also argued that MICRA's one-year limitations period was not extended by Government Code section 945.6 (the Government Claims Act), which provides that "any suit brought against a public entity on a cause of action for which a [pre-filing] claim is required to be presented" to the public entity must be filed within six months after the public entity's rejection of the claim. The County argued that, for his claim against the County to be timely, Carrillo was required to satisfy the deadlines in both statutes.

Carrillo opposed the demurrer. He argued that the applicable statute of limitations was MICRA's "'outside date' of three years" and that, in any case, his claim was timely because "he was not reasonably informed about the manifestation of the injury and its negligent cause until in or around April[] 2018 after he visited the Mexican Consulate."

## C. *The Court Sustains the Demurrer*

In November 2019, the court sustained the County's demurrer without leave to amend. Citing *Roberts v. County of Los Angeles* (2009) 175 Cal.App.4th 474 (*Roberts*), the court held that "[t]he Government Claims Act[']s filing deadlines and limitations period do not supplant the CCP 340.5 limitations periods with respect to malpractice actions against government entity health care providers" and that a "plaintiff must comply with both statutes within the applicable CCP 340.5 limitations period (one year or three

4

years)." The court additionally found that the time to file suit began to run no later than when Carrillo's foot was amputated on December 20, 2017. The court reasoned that MICRA's one-year statute of limitations applied both because the "FAC's allegations make clear that Plaintiff actually believed by the end of December 2017 that his injury . . . was caused by the nurse's popping of the blister on his foot, satisfying the subjective test for triggering the one-year statute of limitations under CCP 340.5" and because the "FAC's allegations also satisfy the objective test for triggering the one-year statute of limitations, as a reasonable person suffering Plaintiff's injury would have suspected by the end of December 2017 that medical care provided by the nurse before the infection developed had something to do with the injury and that reasonable person would have been on inquiry notice by the end of December 2017."

The trial court rejected Carrillo's contention that the time to bring suit did not begin to run until he visited the Mexican Consulate in April 2018. The court concluded that Carrillo could not "credibly argue that he had no reason to suspect wrongdoing or a need to investigate the very obvious amputation of his foot" and that there could be "no question but that a reasonable person having his foot amputated under such circumstances would necessarily be on notice that something was wrong."

After the court entered judgment in the County's favor, Carrillo timely appealed. In August 2022, the Supreme

Court transferred the appeal from the Sixth Appellate District to the Second Appellate District.

## DISCUSSION

**A.** ***Carrillo Was Required to Meet the Deadlines Set Forth in Both Code of Civil Procedure Section 340.5 and Government Code Section 945.6***

Carrillo contends the trial court erred in sustaining the demurrer because the applicable statute of limitations is three years when both MICRA and section 945.6 apply, not one year. Except in circumstances inapplicable here, "any suit brought against a public entity on a cause of action for which a claim is required to be presented" must be brought within six months after the County's rejection of the claim. (Gov. Code, § 945.6, subd. (a)(1).)[2] Additionally, under MICRA, a plaintiff alleging medical negligence must file suit within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (Code Civ. Proc., § 340.5.) As to the one-year limitations period, MICRA "sets forth two alternate tests for triggering the limitations period: (1) a subjective test requiring actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test

_____

[2]     Undesignated statutory references are to the Government Code.

6

requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing." (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391.)

Carrillo contends the trial court misread *Roberts* and argues that *Roberts* held that, where both section 945.6 and MICRA apply, the applicable limitations period is three years. We disagree.

In *Roberts*, the plaintiff suffered severe brain damage while receiving care from a medical center operated by the County of Los Angeles. (*Roberts*, *supra*, 175 Cal.App.4th at 477.) The plaintiff's family was informed of the injury the day it occurred. (*Ibid.*) After conservators were appointed for the plaintiff more than three years later, they presented a timely claim under the Government Claims Act, which was subsequently rejected. (*Id.* at 478.) Within six months of the rejection, but more than four years after the injury, the conservators brought a medical negligence claim against the County of Los Angeles. (*Ibid.*) The trial court granted the county's summary judgment motion on statute of limitations grounds. (*Id.* at 477–478.)

Our colleagues in Division Three affirmed. (*Roberts*, *supra*, 175 Cal.App.4th at 477.) In so doing, they rejected the plaintiff's argument that section 945.6 effectively extended the time to bring suit under MICRA, holding that the statutes could and should both be given effect. (*Id.* at 480–481.) The court stated in *Roberts* that MICRA's three-year limitations period was "the outer limit by which a lawsuit must be filed against a public health care provider."

(*Id.* at 481.) The court explained that, "[t]his way[,] MICRA can apply to public health care providers without conflicting with the Government Claims Act. By the same token, plaintiffs can comply with the section 945.6 limitations period without running afoul of Code of Civil Procedure section 340.5's three-year limit." (*Ibid.*)

Carrillo argues that, because *Roberts* did not state the claim therein was barred by MICRA's one-year statute of limitations, it stands for the proposition that MICRA's three-year limitations period governs when both MICRA and section 945.6 apply. But the plaintiff in *Roberts* filed suit outside the three-year limitations period, so the court had no need to consider or decide whether MICRA's one-year statute of limitations applied. Carrillo concedes that "the 1-year deadline . . . in section 340.5 was not mentioned" in *Roberts*. "'It is axiomatic that cases are not authority for propositions not considered.'" (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.)

Moreover, *Roberts* stated that, for claims against a public entity, where both MICRA and section 945.6 are applicable, the goal is to "'harmonize the law'" and "'avoid an interpretation that requires one statute to be ignored.'" (*Roberts, supra*, 175 Cal.App.4th at 480; see also *id.* at 484 ["[I]t would be incongruous if plaintiff were allowed to invoke the tolling provisions of the Government Claims Act, which was intended by the Legislature to *limit* actions against public entities, to escape the effect of the statute of limitations of another statute with a similar goal"]; accord,

8

*Anson, supra*, 202 Cal.App.3d at 1199, 1202 [MICRA and section 945.6 stand on "equal footing"].) Interpreting *Roberts* as Carrillo urges would necessitate ignoring the portion of MICRA requiring a lawsuit to be filed within three years after the injury "or [within] one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (Code Civ. Proc., § 340.5.) We hold that, here, where both section 945.6 and MICRA apply, Carrillo was obligated to meet the deadlines set forth in both statutes.

### B. *The Allegations of the FAC Do Not Support a Delayed Discovery Exception to the One-Year Statute of Limitations*

Carrillo alleged in the FAC that it was upon visiting the Mexican Consulate for "guidance on immigration matters" in or around April 2018 that he "became informed and on that basis believed that the actions of [the County nurse] were the cause of his gangrene and septic shock, which resulted in the amputation of his right foot." He argues on appeal that the trial court "abused its discretion by making a credibility judgment" when it rejected Carrillo's argument that his suit was timely because he alleged he did not form the "requisite suspicion of negligent cause" until he visited the Mexican Consulate in April 2018. It is true that a demurrer admits the truth of all material facts properly pleaded. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810.) Here, however, the alleged timing of

9

when Carrillo began to suspect the nurse's actions caused his injury is not dispositive of the time when the statute of limitations began to run on his medical negligence claim.

Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements. (*Fox v. Ethicon Endo-Surgery, supra,* 35 Cal.4th 797 at 806). The "discovery rule" is an exception to this general rule and postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (*Id.* at 807.) To rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. (*Id.* at 808.) In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence. (*Ibid.*) Conclusory allegations will not withstand demurrer. (*Ibid.*)

"[O]nce a patient knows, or by reasonable diligence should have known, that he has been harmed through professional negligence, he has one year to bring his suit." (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 896 (*Gutierrez*).) A patient "is charged with 'presumptive' knowledge of his negligent injury, and the statute commences to run, once he has "'notice or information of circumstances to put a reasonable person *on inquiry*, or *has the opportunity to obtain knowledge* from sources open to his

10

investigation . . . ."'" (*Id.* at 896–897.) "It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action." (*Id.* at 898.)

Here, the trial court concluded that the "FAC sets forth the alleged causation and makes clear that [Carrillo] was aware that the purportedly unauthorized treatment (the nurse popping his foot blister) and the purported consequent outcome (the amputation of that same foot) all occurred in December 2017." Carrillo argues that the court improperly disbelieved his allegation that, despite the temporal proximity of the nurse's actions and his amputation, he did not begin to suspect a connection between those events until April 2018. But, as the trial court concluded, Carrillo failed in the FAC to plead specific facts to show he could not have earlier made this discovery, even with reasonable diligence. (*Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at 808, 815.)

Moreover, Carrillo sidesteps the trial court's freestanding conclusion that he was, at a minimum, on "inquiry notice" by the end of December 2017. (*Gutierrez, supra,* 39 Cal.3d at 896–898; *see also Kitzig v. Nordquist, supra,* 81 Cal.App.4th at 1391.) By failing to address the court's conclusion that a reasonable person would have been prompted to investigate by the time of the amputation, Carrillo has forfeited any argument that the court erred in so concluding. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177.) Even if he had not, we find no error in the trial court's conclusion that, by the

11

time of the amputation "a reasonable person having his foot amputated under such circumstances would necessarily be on notice that something was wrong and . . . would have acted diligently to discover the cause of his injury at that time."[3]  (See *Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 299–300 [where allegations bearing on issue of whether plaintiff was on inquiry notice would support only one legitimate inference, question is one of law that may be resolved on demurrer].)

Because Carrillo filed his suit more than a year after his amputation, the trial court did not err in sustaining the County's demurrer on statute of limitations grounds.[4]

---

[3]  This court need not decide the propriety of the trial court's conclusion that the allegations of the FAC show that Carrillo subjectively had the requisite knowledge more than a year before he filed his complaint.  (See *Excelsior College v. Board of Registered Nursing* (2006) 136 Cal.App.4th 1218, 1237, fn. 3 ["Since we uphold the trial court's ruling on the first basis for demurrer, we need not address this second argument"].)

[4]  The County also demurred on immunity grounds under Government Code section 844.6, subdivision (a)(2), which provides that a public entity is not liable for an injury to a prisoner.  Because the trial court sustained the demurrer on statute of limitations grounds, it declined to reach this issue.  Because we affirm the trial court's order sustaining the demurrer on statute of limitations grounds, this court need not reach the immunity issue, either.

**DISPOSITION**

The judgment is affirmed. Respondent is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**

SCADUTO, J. *

We concur:

COLLINS, Acting P.J.

CURREY, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.