Filed 3/26/25  City of Modesto v. Superior Court CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITY OF MODESTO et al.,<br><br>Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO COUNTY,<br><br>Respondent;<br><br>THE DOW CHEMICAL COMPANY and PPG INDUSTRIES, INC.,<br><br>Real Parties in Interest. | A171180<br><br>(San Francisco City & County Super. Ct. Nos. CGC-98-999345, CGC-98-999643) |

In 1998, the City of Modesto and the Modesto Redevelopment Agency sued various retail drycleaning businesses operating in Modesto together with the manufacturers of equipment used at those drycleaners, and the manufacturers and distributors of drycleaning solvents.  Plaintiffs alleged that the defendants had caused the City's groundwater, soil, and sewer system and easements to become contaminated with toxic chlorinated

solvents.[1]  In this writ proceeding, the City seeks review of the trial court's order sustaining without leave to amend a demurrer by two solvent manufacturer defendants, the Dow Chemical Company (Dow) and PPG Industries, Inc. (PPG) (collectively Defendants), to the City's causes of action for strict liability and negligence based on contamination occurring at a specific drycleaner location.  The City contends the trial court erred in concluding its claims are barred by the statute of limitations.  We agree.

## BACKGROUND

For context, we note that these writ proceedings arise out of challenges to pleadings filed almost 25 years after the action was commenced.  During that time, the case has been litigated extensively, including five trial phases and several detours to this court.  (*City of Modesto, supra,* 19 Cal.App.5th 130, 135.)  As relevant here, in the third phase of the trial, the City sought damages under negligence and strict liability theories for contamination of the City's groundwater and soil in street and

---

[1] The separate actions filed by the City of Modesto and the Modesto Redevelopment Agency were consolidated and in 2012, after the Legislature effectively dissolved the Redevelopment Agency, the City became the Redevelopment Agency's "successor agency" by operation of law.  (Health & Saf. Code, §§ 34172, 34173; *City of Modesto v. Dow Chemical Co.* (2018) 19 Cal.App.5th 130, 135, 142 (*City of Modesto*).)  The City of Modesto and the Modesto Redevelopment Agency are referred to in these proceedings collectively as the City, and insofar as the allegations of the complaints are sufficiently similar for purposes of these proceedings, we cite only to the City of Modesto's complaint.

sewer easements at several drycleaner businesses, including the location of the Sunshine a/k/a Coit (85) Dry Cleaner (the Sunshine site).  During that trial phase, the court entered a directed verdict in favor of Defendants on several of the City's claims, including those arising from alleged contamination at the Sunshine site, finding that the City had not shown that the contamination had caused any damage to the sewer or wastewater systems, or to any City property.  In our 2018 decision, we reversed this part of the judgment after concluding that the trial court applied an incorrect test for appreciable harm and remanded for further proceedings.

In December 2023, Defendants filed a motion for summary adjudication of, among other things, the City's strict liability and negligence causes of action based on contamination occurring at the Sunshine site.  They argued that the City's claims were barred by the statute of limitations because the City knew or reasonably should have known of the contamination at that location in 1991.  The court granted the motion in part but gave the City leave to cure pleading defects as to part of its claim.  Specifically, the court found, based on the undisputed facts, that the City's claims for contamination occurring *within* the sewer pipes accrued in 1991 so that the complaints filed in 1998 were untimely.  The court concluded, however, that the City's claims for contamination of the soil and groundwater *outside* the pipes were not necessarily barred because they did not accrue until they were discovered in 1998, but the complaint failed to allege

3

facts supporting the City's delayed discovery.[2]  Accordingly, the court gave the City leave to amend its complaint to allege discovery of that harm.

In response, the City filed a "second amendment to third amended complaint" that alleges "Plaintiffs did not know, and could not reasonably have known, of both the existence and cause of Plaintiffs' claimed harm from perchloroethylene ("PERC" or "PCE") contamination of public property related to the Sunshine a/k/a Coit (85) site at 1645 Princeton Avenue, Modesto, California, until 2002, when PCE was first detected under the public right of way near the Sunshine (85) property. [¶] There are more than 100 past and present drycleaning operations in Modesto.  Investigations to locate subsurface PCE contamination are expensive and time consuming.  The City of Modesto does not have a hazardous waste division tasked with investigating the sources of subsurface contamination. [¶] During the 1990s the State of California investigated dry cleaners throughout the State as potential sources of PCE contamination.  When the City learned of this investigation it instructed dry cleaners in Modesto to stop discharging PCE to City sewers.  The City then inspected dry cleaners, including Sunshine (85), to insure compliance.  The City also regularly flushed sewers to remove contaminants,

_____

[2] The trial court's ruling was based on testing conducted by the Stanislaus County in 1998 that showed contamination in the soil at the Sunshine location.  According to the City's subsequent amendments, however, the City was never informed of the County's investigation and did not identify the contamination to the soil in that location until it did its own testing in October 2002.

4

including PCE. [¶] The City was not made aware that PCE was present in public rights of way or groundwater adjacent to the Sunshine (85) site until the City itself tested that public right of way for PCE in 2002. . . .[¶] In light of the time, expense and scope of the investigation needed to determine whether PCE was present in public rights of way in Modesto, the City could not reasonably have discovered both its harm and the cause of that harm in the public right of way adjacent to the Sunshine a/k/a Coit (85) site prior to October 2002."

Defendants moved to strike the amendment, arguing, among other things, that "[i]f the City wanted to assert in this action claims that accrued in 2002, it needed to have filed a supplemental complaint pleading those post-commencement allegations before the statute of limitations expired in 2005. It did not. As a result, the City's latest set of amendments pleads the Sunshine/Coit site out of this action entirely."

On April 22, 2024, the court granted Defendants' motion to strike the amendment. At the hearing on the motion, the court explained that it had expected the City to be able to plead that it had knowledge of the soil contamination in 1998 when it filed its complaint, but that given its allegation that it did not have knowledge until 2002, the City was required to have filed a "supplemental complaint" within three years. The Court further concluded that the City could not relate its knowledge in October 2002 back to the 1998 complaint because "if you say in your pleadings that you weren't aware of it until late 2002, then as far as the Court is concerned, the fact—the facts were not in

5

existence as of 1998." The court granted, however, the City's request for leave to file an amendment alleging facts supporting application of the continuing violation doctrine.

In response, the City submitted an "amendment to third amended complaint" that alleges: (1) the Sunshine trial site in Modesto involves a dry cleaning operation that was in business continuously from 1980 through 1998; (2) during the three years prior to the filing of the complaint, PCE used at Sunshine was incrementally and continuously released into the environment at the site, through the operator and/or employees dumping PCE into the sewer or out of doors, through overflow or other discharge from a separator that was not well maintained or had a blocked outlet, and/or from ongoing leaks, drips and spills that are inevitable in dry cleaning operations that use PCE; (3) these releases were in increments too small to be individually actionable, but they collectively and cumulatively caused extensive contamination of groundwater and public property during the operation of Sunshine; and (4) Defendants were a substantial factor in causing the contamination.

Defendants then filed a demurrer that resulted in the ruling presently before us. Defendants again argued that the City "is not entitled to separate accrual dates for harm to different aspects of its properties, such as harm to its soil or harm to groundwater," and that all of the City's claims were barred by the statute of limitations because they accrued in 1991. Defendants argued further that "even if the continuing violation doctrine somehow could apply to create a separate accrual date

6

for injury to the City's soil or groundwater, those claims remain time-barred because the City did not and could not plead them in its 1998 complaint and instead waited until 2024 to amend to add them."

On June 28, 2024, the court sustained Defendants' demurrer without leave to amend. At the hearing on the motion, the court explained that, when it granted leave to amend following the motion for summary adjudication, it indicated that "appreciable harm . . . took place in 1998" and it was "looking to see whether there was anything in your pleadings, which concerns the time period between 1995 and 1998 to substantiate the basis for your filing of a complaint in '98." The court reiterated that the claims were time-barred if the discovery was in 2002 because the City did not file a supplemental complaint within three years. Looking at the final proposed amendment, the court found that the pleading does not include anything suggesting that the City knew about the contamination to soil and groundwater outside the sewer pipes at the Sunshine location between 1995 and 1998.

## DISCUSSION

A statute of limitations defense may be asserted by general demurrer. (Code Civ. Proc., § 430.10, subd. (e); *Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 326.) We review an order sustaining a demurrer on statute of limitations grounds de novo. (*Cavey*, at p. 326.) "The untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed before an appellate court will affirm an order

7

sustaining the demurrer. [Citation.] Under this standard, allegations in the complaint or judicially noticed materials showing the claim *might* be barred are not enough." (*Ibid*.)

Here, the trial court concluded that the statute of limitations ran in 2005, three years after the City discovered that the soil and groundwater at the Sunshine site was contaminated and that the City failed to file a "supplemental complaint" within that time period. The court rejected the City's argument that it was not required to amend its complaint after completing its testing at the Sunshine location because the claim was encompassed in the original complaint filed in 1998 and as amended in January 2002. We agree with the City that its claim for contamination to soil and groundwater at the Sunshine location was sufficiently alleged in the Third Amended Complaint (Complaint) and therefore that defendants failed to establish the untimeliness of the claim for purposes of demurrer.

As relevant here, the Complaint alleges that the City "owns, operates, maintains, supervises, and/or controls the sewer and water system, including, but not limited to, all wells, sewers, pipes, connectors, transmission facilities, sewage and water purification facilities, related and associated equipment, appurtenances, real property and easements, facilities, soil and groundwater ('sewer and water system')" and that its "sewer and water system is contaminated with toxic chlorinated solvents as a direct result of defendants' negligent conduct in manufacturing, distributing, using, controlling, and disposing of chlorinated solvents, and the equipment designed to use chlorinated

8

solvents." The Complaint alleges further that, "[a]s a direct and proximate result thereof, plaintiffs must initiate a remedial program to assess, evaluate, investigate, monitor, remove, clean up, correct, and abate chlorinated solvent contamination and to restore plaintiff's property at significant expense, loss and damage."

In these proceedings, Defendants do not dispute the City's assertion that it was not required to allege specifically each location at which contamination occurred. (See *C.W. Johnson & Sons, Inc. v. Carpenter* (2020) 53 Cal.App.5th 165, 169 [complaints should allege ultimate facts and leave details to post-complaint discovery].) Nor do Defendants assert that the City was required to amend its complaint each time testing confirmed contamination at a specific location. Indeed, as the City notes, this case has proceeded for more than 20 years on the understanding that the City's claims based on contamination at the Sunshine site were encompassed by the original complaints.

Defendants argue, however, that the City's "startling allegation" in 2024 that it "did not know, and could not reasonably have known, of both the existence and cause of [Plaintiffs'] claimed harm from perchloroethylene . . . contamination of public property" at the Sunshine site before October 2002 precludes the City from relying on the pre-2024 Complaint as asserting those claims. Defendants assert that each site involves a separate set of claims, subject to a site-specific accrual and statute of limitations analysis (see *San Francisco Unified School Dist. v. W.R. Grace & Co.* (1995)

9

37 Cal.App.4th 1318, 1335–1336 & fn. 6 [accrual of a school district's asbestos-injury claims should be analyzed "on a building-by-building basis"].) Citing Code of Civil Procedure section 128.7, subdivision (b)(3), Defendants contend that "the claims in the City's complaints are limited to those about which the City had knowledge at the time the complaints were filed," which, based on the City's asserted 2024 "judicial admission," did not include the Sunshine site.[3]

It is well established that on demurrer, "[p]leadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears. . . . In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties." (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955; see also *Bichai v. Dignity Health* (2021) 61 Cal.App.5th 869, 876–877 ["A court considering a demurrer ordinarily gives the complaint a reasonable interpretation, reading it as a whole and its parts in

---

[3] In their informal opposition, Defendants argued additionally that the trial court's decision was correct for the alternative reasons that "the continuing-violation doctrine cannot postpone accrual of the City's Sunshine-related claims until 1998 because the City knew about its Sunshine injuries in 1991—a judicially noticeable (and judicially noticed) conclusion the superior court drew in its [motion for summary adjudication] order, and one which the City did not timely challenge" and "even if that doctrine could apply, the City did not plead it adequately— despite specific instructions from the superior court to do so." These arguments were not reasserted in Defendants' formal return and thus are not addressed in this decision.

their context"].)  In addition, in order for the doctrine of judicial admission to apply, the pleading purportedly constituting a judicial admission must be unambiguous and unequivocal, not a tacit admission or a fragmentary and equivocal concession.  (See, e.g., *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456 [" 'A judicial admission is a party's unequivocal concession of the truth of a matter' "]; *Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 385 ["An unclear or equivocal statement does not create a binding judicial admission"].)  Defendants' characterization of the 2024 pleading as a "judicial admission" that the City lacked a factual basis for any claim arising out of the Sunshine site in 1998 relies on an unnecessarily narrow reading of the 2024 amendment that is inconsistent with the allegations of the Complaint as a whole.

As set forth more fully above, the Complaint and the 2024 amendments, read together, allege that the City knew in 1998 when it commenced these proceedings that its groundwater and soil had been contaminated by the release of solvents at drycleaning locations throughout the City, but that it had not at that time completed testing to confirm all locations where leaking had occurred and quantified its damages.  In late 2002, it completed its testing at the Sunshine site and confirmed that contamination had occurred.  Such pleading is entirely appropriate.  (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*) ["suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of

11

limitations period"].) The filing of the complaint in 1998 certainly was not "frivolous," as Defendants suggest. (See *Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1120, 1126 [claim is not "factually frivolous" under Code of Civil Procedure section 128.7, subd. (b)(3) where plaintiff has "made a reasonable inquiry into the facts and entertained a good faith belief in the merits of the claim"].)

   *Brumley v. FDCC California, Inc.* (2007) 156 Cal.App.4th 312, *Fox, supra*, 35 Cal.4th 797, and *Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788 (*Pooshs*), cited by Defendants, are distinguishable. In *Brumley*, the court held that the trial court erred in dismissing certain claims under Code of Civil Procedure section 583.310 that required the plaintiff to bring the case to trial within five years of the filing of the original complaint. (*Brumley*, 156 Cal.App.4th at p. 317.) Specifically, the court held that the plaintiff's cancer survivorship claim, which was added in an amended complaint, should not have been dismissed because it did not relate back to the original claims for asbestosis and pleural disease that were alleged in the original complaint. (*Id.* at pp. 325–326.) The court explained that "a new claim relates back only if it 'involve[s] the *same injury* . . . as the original one' " and that "[i]t is generally accepted that the different distinct illnesses caused by asbestos constitute different injuries, despite their occurrence in the same person as a result of the same exposure." (*Ibid.*) The court added, "Defendants do not argue that asbestosis and cancer are in fact the same injury, but only that the language of Brumley's original complaint, which

12

referred generally to 'lung damage,' can be read to include cancer. While this may be true, there is no dispute that Brumley's lung cancer did not manifest itself until several years after the original complaint was filed.  Regardless of its language, the original complaint cannot plausibly be read to refer to a disease of which Brumley was unaware at the time of its filing. Accordingly, the cancer survivorship claim does not relate back to the original complaint and should not have been dismissed." (*Id.* at p. 326.)  Here, however, the City alleged in 1998 that Defendants' conduct caused contamination to its groundwater and soil occurring at several locations throughout the City, and subsequent to filing the complaint, the City confirmed the existence of contamination at a specific location.  The City is not asserting a claim based on an injury at the Sunshine site that is new and different from the one alleged in the original complaints.

In *Fox, supra,* 35 Cal.4th 797, 809, the plaintiff timely filed a medical malpractice action.  More than a year later, after learning during the deposition of her doctor that she was injured by a specific medical device, the plaintiff filed an amended complaint attempting to add a cause of action for products liability against the manufacturer of the device.  (*Ibid.*)  The trial court sustained a demurrer to the products liability claim on the ground that it was barred by the statute of limitations.  (*Id.* at p. 810.)  The Supreme Court upheld the decision of the appellate court reversing the trial court's ruling on the demurrer.  (*Id.* at p. 815.)  In doing so, the Court observed, "As the allegations in this case illustrate, a diligent plaintiff's investigation may only

13

disclose an action for one type of tort (e.g., medical malpractice) and facts supporting an entirely different type of tort action (e.g., products liability) may, through no fault of the plaintiff, only come to light at a later date. Although both claims seek to redress the same physical injury to the plaintiff, they are based on two distinct types of wrongdoing and should be treated separately in that regard." (*Id.* at pp. 814–815.) The court observed that "[i]t would be contrary to public policy to require plaintiffs to file a lawsuit 'at a time when the evidence available to them failed to indicate a cause of action' " and that "[w]ere plaintiffs required to file all causes of action when one cause of action accrued, . . . they would run the risk of sanctions for filing a cause of action without any factual support." (*Id.* at p. 815.) Here, unlike in *Fox*, the City's claims arising out of contamination at the Sunshine site are not an "entirely different type of tort action" based on a "distinct type of wrongdoing" from that alleged in the original complaints. The City's knowledge in 1998, as alleged in the original complaints, put it on notice of contamination at drycleaner locations throughout the city, and was sufficient to support the complaints' filing.

Finally, in *Pooshs,* the Court held that "two physical injuries—both caused by the same tobacco use over the same period of time—can, in some circumstances, be considered 'qualitatively different' for purposes of determining when the applicable statute of limitations period begins to run." (*Pooshs,* 51 Cal. 4th 788, 792.) Relying in part on *Fox, supra*, the Court reasoned that "no good reason appears to require plaintiff, who

14

years ago suffered a smoking-related disease that is *not* lung cancer, to sue *at that time* for lung cancer damages based on the speculative possibility that lung cancer might later arise." (*Id.* at p. 802.)  The court, however, distinguished the case before it, which involved two harms "of a *completely different type*," from one which involved "only a single *type* of injury." (*Id.* at p. 799.)  The court explained that the relevant question before it was "whether 'the infliction of appreciable and actual harm' in the form of a specific disease (such as COPD here) would 'commence the statutory period' with respect to a *separate and distinct disease* (as the lung cancer here is alleged to be)" and not, as in the case distinguished, "whether uncertainty as to the extent of the damages associated with *that single injury* delayed the running of the statute of limitations." (*Ibid.*)  Because the statute of limitations issue raised in this writ proceeding involves the same *type* of injury—contamination of groundwater or soil— caused by the same alleged conduct occurring at several different locations throughout the city, *Pooshs* is not controlling.

While the court therefore erred in sustaining the demurrer, we note that this determination does not preclude revisiting the merits of Defendants' statute of limitations defense going forward.[4]  Defendants write:  "To be clear, Defendants believe that the evidence—including evidence that the City produced

---

[4] In light of our conclusion that the City's Sunshine site claims were timely asserted in the original complaints, we need not consider Defendants' additional argument that the trial court correctly determined that the City's Sunshine-related claims in its May 2024 amendments were time-barred.

decades late in March 2024, after the trial court decided Defendants' summary adjudication motion—proves that the City actually knew about all of its Sunshine-related injuries in 1991, when it was made aware that a cracked sewer main adjacent to the Sunshine cleaners was contaminated with perchloroethylene. And if the City is permitted to proceed on its Sunshine-related claims, Defendants will demonstrate, either in a future motion for summary adjudication or at trial, that the City filed its original 1998 complaints four years too late." This approach would be entirely consistent with the manner in which the statute of limitations defense has been litigated in these proceedings to date.

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue ordering respondent court to vacate its June 28, 2024 order sustaining without leave to amend Defendants' demurrer to the City's causes of action for strict liability and negligence, and to enter a new order overruling the demurrer. The order to show cause is discharged. The City shall recover its costs incurred in this proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.